WILLIAM A. STIX, Respondent, v. TRAVELERS INDEMNITY COMPANY of Hartford, Connecticut, Appellant.

St. Louis Court of Appeals, June 3, 1913.

1. **INSURANCE: Rules for Construing Policies.** Insurance policies are to be construed so as to effectuate, and not defeat, the insurance, and if their language is doubtful, it is to be strictly construed against insurer and in such a way as to protect the interests of insured.

2. **DEFINITIONS: "Roadbed."** In common roads the term "roadbed" refers to the whole material laid in place and ready for travel.

3. **ACCIDENT INSURANCE: Injury to Automobile: Policy Construed: "Roadbed."** An automobile, which was insured against

damage caused solely by collision with another object (damage from striking any portion of the roadbed being, however, expressly excluded from the risk) skidded on a roadway, so as to thrust the rear wheels across a granitoid guttering, twenty inches wide, and on a level with, and adjacent to, the roadway, and thence across a grass plot adjoining, two feet wide, where they collided with a sidewalk, which was six inches above the plot, causing damage to the automobile. *Held*, that the term "roadbed," used in the policy, referred to that portion of the road between the gutters which was constructed for travel, and not to the gutters, which were designed to drain water from the roadbed, and hence the collision was actionable, under the policy.

4. **INSURANCE: Rules for Construing Policies: Restrictions on Indemnity.** Although it is the duty of the courts to ascertain the intention of the parties, as manifested by the language of the policy, and to effectuate such intention, when it is clearly expressed, it is likewise their duty to resolve doubtful language and ambiguous provisions against insurer and in favor of insured; and, under the influence of this doctrine, restrictions on the amount of indemnity vouchsafed in a policy, to be available, should appear in plain words and without doubt.

5. **ACCIDENT INSURANCE: Restrictions on Indemnity: Policy Construed.** A policy insuring against damage by accident provided that, "each claim hereunder shall be adjusted separately, and from the amount of each claim, when determined, the sum of $25 shall be deducted, and the company shall be liable for loss or damage in excess of that amount only." In an action on the policy, the trial court gave the jury an instruction which authorized a verdict for the full amount of plaintiff's damage. *Held*, that this instruction was erroneous, since the policy limited the liability of insurer to the amount of damage sustained in excess of $25.

6. **APPELLATE PRACTICE: Excessive Recovery: Remittitur.** Where the amount of excess of an excessive verdict is ascertainable, the appellate court may permit a remittitur thereof, to prevent a reversal of the judgment; and hence where, under a policy of insurance sued on, defendant was liable for the amount of damage sustained in excess of $25, and the jury, under an erroneous instruction, returned a verdict for the full amount of damage sustained, it was proper to permit plaintiff to remit $25, on appeal, and thus cure the error of the instruction.

7. **INSURANCE: Vexatious Refusal to Pay: Damages: Sufficiency of Evidence.** In an action on an accident insurance policy, damages and an attorney's fee for vexatious delay in the payment of the insurance may be awarded plaintiff, under

Sec. 7068, R. S. 1909, although there is no direct and positive evidence of vexatious delay, since the jury may infer that such was the fact from a survey of the facts and circumstances tending to reveal insurer's conduct with respect to the matter and from a consideration of plaintiff's claim and the fact that it became necessary to institute a suit to collect it; the fact that defendant declined to pay without litigation being, of itself, evidence tending to prove that the delay was vexatious.

Appeal from Montgomery Circuit Court.—*Hon. James Barnett*, Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant.

(1) The court erred in overruling the demurrer to the evidence because it appears, from the testimony offered by plaintiff (which was all the testimony on that subject), that the injury to the machine resulted from collision of the machine with the gutter and roadbed, the gutter being a part of the roadbed within the meaning of the law; therefore the damage to plaintiff's machine was not covered by the policy in this case, which expressly excluded damages resulting from collision with any part of the roadbed. Plaintiff alleged that the machine was damaged by coming in contact with an object which was no part of the roadbed. His proof shows just the contrary, and there was, therefore, a total failure of proof of the material allegations of the petition. (2) The court erred in giving instruction numbered 2 at the request of plaintiff: (a) Because it permits recovery for an element of damages for which plaintiff is not entitled to recover and therefore permits an excessive verdict. (b) The instruction misdirected the jury by telling them, as a matter of law, that the granitoid gutter was not a part of the roadbed. Warren v. Henley, 31 Iowa, 31; Railroad v. Spearman, 12 Iowa, 112; Buell v. Ball, 20 Iowa, 282; McNamara v. Estey, 22 Iowa, 246.

*Nolin & Hughes* and *Barclay, Fauntleroy, Cullen & Orthwein* for respondent.

(1) That the gutter and the parallel granitoid sidewalk, which was "two feet away from, and which ran parallel to, the gutter," were not part of the "roadbed," see Meadows v. Insurance Co., 129 Mo. 76; Langston v. Insurance Co., 30 S. W. 428, 60 Ark. 381; Santa Clara Co. v. Railroad, 118 U. S. 412-413; Shreveport v. Railroad, 32 S. W. 189, 107 La. 785. (2) The court was correct in omitting to direct the jury to allow the $25 deduction, as claimed in appellant's point 2, for the reason that such allowance was only to be had in the event that the loss should be "adjusted" and "determined" by appraisal. We do not think that there is any conflict, or misunderstanding, as to the terms of the policy, upon this point. But if there should be any conflict in the terms of the contract—the policy—upon this question, such doubt should be determined in favor of the insured, and against the company, as the language used is that of the insurance company who writes the policy. Davis v. Insurance Co., 84 S. W. 260; Tucker v. Insurance Co., 51 S. E. 86; Szymkus v. Insurance Co., 114 Ill. 401; Martin v. Insurance Co., 192 U. S. 165; Layton v. Insurance Co., 139 N. W. 464. (3) That the unexplained refusal of the insurance company to adjust or pay this loss, without litigation, is sufficient to take the case to the jury upon the issue as to whether such refusal was vexatious and without cause, see Cox v. Insurance Co., 154 Mo. App. 464; Kellogg v. Insurance Co., 133 Mo. App. 391; Lockwood v. Insurance Co., 47 Mo. 50; Williams v. Life Insurance Co., 189 Mo. 70; Keller v. Insurance Co., 198 Mo. 460.

NORTONI, J.—This is a suit on a policy of insurance against loss or damage to an automobile caused solely by collision with another object. Plaintiff recovered and defendant prosecutes the appeal.

By the terms of the policy, loss or damage caused by striking any portion of the roadbed is excluded from the risk to be compensated, and the question for consideration concerns the interpretation of this clause of the policy. The court instructed the jury that the guttering adjacent to the roadway and the sidewalk beyond, with which the automobile collided, were not a portion of the "roadbed."

It appears plaintiff's automobile in charge of a chauffeur slipped or skidded while descending a hill in Forest Park in St. Louis and became unmanageable. The machine was moving at a rapid rate of speed and slipped or skidded so as to thrust the rear wheels across the guttering next adjacent to the roadway and across a grass plat two feet wide between the guttering and the sidewalk, where the rear wheel collided with the granitoid sidewalk. The granitoid sidewalk is about six inches higher than the surface of the earth and it appears the collision of the rear wheel of the automobile with it occasioned the complete reversal of the position of the machine—that is, it headed about, jumped over the sidewalk and overturned backwards, falling across the gutter and upon the roadbed. The evidence tends to prove, and from the finding of the jury it appears, that the collision with the sidewalk operated as the proximate cause of the damage done to the machine. The roadway is constructed through Forest Park at the point in question with granitoid guttering adjacent on either side, but no perpendicular curb, as is usual on the side of a city street, is there maintained. The guttering is shown to be about twenty inches in width and slopes as a semicircle from, and on a level with, the sides of the roadway to the center of the gutter, whence it raises toward the grass plat and sidewalk. It is said that the center of the gutter is but two or three inches lower than its sides. Immediately outside of the gutter and adjacent thereto is a grass plat two feet in width, and adjacent to this is

the granitoid sidewalk, which rises six inches above the surface of the grass plat. The evidence tends to prove that, upon the automobile skidding, the rear wheels slid over and across the guttering, ploughed a hole in the grass plat and collided with the sidewalk with such force as to tear the tires from the rear wheels and occasion the machine to right about, jump over the walk, rear up and fall over across the gutter and upon the roadbed.

The policy sued upon vouchsafes insurance against loss or damage to the automobile including its operating equipment while attached thereto, if such damage is "caused solely by collision with another object (excluding however . . . all loss or damage caused by striking any portion of the roadbed . . . " While the evidence is almost conclusive that the proximate cause of the damage was the collision of the rear wheels of the automobile with the sidewalk, there is a strong inference arising therefrom to the effect that the tires might have been dissevered from the wheels through sliding across the granitoid gutter, and because of this it is urged the court erred in instructing the jury that the gutter constituted no part of the roadbed. In the concluding lines of the principal instruction given for plaintiff, the court instructed the jury that the cement or granitoid guttering was not a part of the roadbed of said road within the meaning of the policy read in evidence. It is urged that this instruction inheres with error for the reason the gutter is within and a part of the street or roadway. The proposition is, no doubt, entirely true with respect to the power of a city to construct, improve and maintain streets and is usually so declared. [See Warren v. Henly, 31 Iowa, 31.] But though such be true, it is obvious that the gutter constructed in the street or on the roadway and along the side of the roadbed is not a portion of the roadbed when considered with ref-

erence to the subject-matter contemplated in this insurance policy. The language employed in insurance policies is to be construed so as to effectuate the insurance and not for the purpose of defeating it, for the insurance vouchsafed is the very object and purpose of the contract. Therefore, if the language is in the least doubtful, it is to be more strictly construed against the company who selects and incorporates it into the policy, and in such a way as to protect the interests of the insured who has paid a consideration for the indemnity. [See Tucker v. Colonial Fire Ins. Co., —— W. Va. ——, decided May 11, 1905, 51 S. E. 86; Szymkus v. Eureka, etc., Ins. Co., 114 Ill. App. 401; London, etc., Ins. Co. v. Davis, —— Texas Civil App. ——, 84 S. W. 260; Royal Ins. Co. v. Martin, 192 U. S. 149, 165.] In this view, the courts construe exemptions from liability, incorporated in insurance policies on account of injuries incurred on railway roadbeds, to refer alone to the foundation on which the superstructure of the railroad, consisting of the ties and rails, is rested, and not to that portion of the right of way beyond. [See Meadows v. Pac. Mutual Life Ins. Co., 129 Mo. 76, 97, 31 S. W. 578; Standard Ins. Co. v. Langston, 60 Ark. 381; see, also, Santa Clara County v. So. Pac. R. Co., 118 U. S. 394, 412, 413; Shreveport v. Shreveport Belt Ry. Co., 107 La. 785.] Here the policy does not exclude loss or damage caused by striking any portion of the roadway or street but rather confines the exemption of liability to the more restricted area of the "roadbed." In common roads the term "roadbed" refers to the whole material laid in place and ready for travel. [See Webster's Dictionary.] Obviously the roadbed involved here consisted of that portion between the gutters on either side, which was constructed for travel, and not to the gutters, designed for the purpose of draining water from the adjacent roadbed. The court did not err in in-

structing the jury that the granitoid gutter constituted no part of the roadbed.

It is said the automobile was a valuable one, costing $6500 when new, about a year before the injury. The evidence tends to prove that it was damaged from $2500 to $3000 as a result of the collision with the sidewalk. The jury awarded plaintiff $2500. By instruction, the court authorized a recovery for the full amount of the damage inflicted upon the machine. It is insisted this was error for the reason that the policy by its express provisions remits twenty-five dollars of the loss to the insurance company in every instance and casts liability against it only for such damages as accrue over and above twenty-five dollars. The question is to be determined by interpreting the language of the policy in connection with the subject-matter to which it refers and in view of an established rule of law in insurance cases. The provision is as follows:

"Each claim hereunder shall be adjusted separately, and from the amount of each claim when determined the sum of twenty-five dollars ($25) shall be deducted, and the company shall be liable for loss or damage in excess of that amount only."

Following this are certain provisions with respect to the ascertainment of the amount of a claim for loss, and it is provided the company shall not be responsible beyond the intrinsic value of the property destroyed. Furthermore, the provision goes to the effect that the parties shall agree on the amount of the loss if possible; if not, then two appraisers may be selected to do so, and if they fail to agree then a third may be selected by them. An arbitration seems to be thus provided for and contemplated. It is urged that the clause above copied is available to defendant by way of reducing its liability to an amount in excess of twenty-five dollars only in case an adjustment is made or the amount determined in accordance with the provisions of the policy relating to an agreement between

the parties or appraisement. Of course, in every case
the fundamental inquiry must be as to the intention of
the parties, to be gathered from the words of the pol-
icy, always, however, interpreting the policy most fa-
vorably to the insured where it is reasonably suscepti-
ble of two constructions. In other words, though it
is the duty of the court to seek out the intention of the
parties as manifested in the language of the policy and
effectuate it when such intention is clear, it is likewise
our duty to resolve doubtful language and ambiguous
provisions against the company and in favor of the
insured. Under the influence of this doctrine, restric-
tions on the amount of indemnity vouchsafed in a pol-
icy of insurance, to be available, should, we believe, ap-
pear in plain words and without doubt. [See Royal
Ins. Co. v. Martin, 192 U. S. 149, 164, 165.] The rule
last stated is invoked, but the provision of the policy
appears to be sufficiently clear in revealing a restric-
tion on the covenant of indemnity relieving the insurer
from liability in all cases for the amount of twenty-
five dollars to be deducted from the entire damage
done. Though the provision now under considera-
tion refers to the "adjustment" of the amount of dam-
age, the real subject-matter with which it is concerned
is the extent of the liability of the insurance company
for loss or damage. The provision goes to the effect
that from the amount of each claim when determined
the sum of twenty-five dollars shall be deducted, then
recites "and the company shall be liable for loss or
damage in excess of that amount only." These words
clearly restrict the indemnity vouchsafed, in that they
stiplate the amount to be compensated for such loss is
only such an amount as appears in excess of twenty-
five dollars. The court erred in authorizing the jury
by instruction to return a verdict for the full amount
of plaintiff's damage. It should have required a de-
duction of twenty-five dollars first to be made in favor
of the company and authorized a verdict for the re-

mainder. However, the amount the verdict thus unduly inflated is ascertained and certain, and is therefore a proper subject of remittitur.

The statute (Sec. 7068, R. S. 1909) authorizes a recovery of attorney's fee on the part of insured if it appear from the evidence that the company has vexatiously refused to pay the loss. The jury awarded plaintiff an attorney's fee of $500 on account of vexatious delay. It is urged that this amount should be remitted for the reason that there is no evidence in the case tending to prove the delay in payment was vexatious. A practicing attorney testified that $500 was a reasonable charge for services rendered in the cause, and the sufficiency of the evidence with respect to that matter is not challenged. But the argument goes to the effect that there is no evidence tending to prove the delay was vexatious. It is true there is no direct and positive evidence to the effect that the delay in payment was vexatious, but such evidence—that is positive and direct evidence—is not required. The jury are authorized, in cases of this character, to infer and conclude that the delay was vexatious from a survey of all of the facts and circumstances in the case tending to reveal the conduct of the insurance company with respect to the matter. In this connection they may take into consideration the validity of plaintiff's claim and the fact that it became necessary to institute a suit to collect it. Indeed, the fact that defendant declined to compensate the loss without litigation is of itself evidence tending to prove the delay thereabout to be vexatious. Such is the established rule of decision. [See Keller v. Home Life Ins. Co., 198 Mo. 440, 460, 461, 95 S. W. 903; Cox v. Kansas City Life Ins. Co., 154 Mo. App. 464, 135 S. W. 1013; Williams v. St. Louis Life Ins. Co., 189 Mo. 70, 87 S. W. 499.]

For the error in the instruction authorizing a recovery in full compensation when twenty-five dollars should have been deducted, the judgment must be re-

versed. But it is unnecessary to remand the cause for this, provided the amount of twenty-five dollars be remitted from the verdict as of the date of the judgment. Therefore, if plaintiff file such remittitur in this court within ten days, the judgment, with such modification, will be affirmed and appellant shall have and recover the costs of the appeal laid out and expended, otherwise the cause will be remanded. In the interim, the judgment will stand reversed.

Plaintiff having remitted twenty-five dollars from the amount of the verdict as of its date, the judgment is affirmed for $2475 together with interest thereon at six per cent per annum from the date of its rendition, the appellant to have the costs of appeal paid out and expended. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.