FÁBREGAS, PLAINTIFF AND APPELLEE, *v.* PORTO RICAN AND AMERICAN INSURANCE COMPANY, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in an Action to Recover on an Insurance Policy.

No. 2667.—Decided April 2, 1923.

ACCIDENT INSURANCE—COLLISION—EVIDENCE.—It having been proved that the rider to the policy offered in evidence by the defendant to show that the contract did not include the risk of collision never formed a part of the contract of insurance against accidents, the refusal of the court to admit it in evidence should be sustained, especially as it was not in the record on appeal.

ID.—ID.—If an automobile in motion leaves the roadbed and falls over a precipice, striking the earth violently, there is a collision within the meaning of that word when used unqualifiedly in an insurance contract.

The facts are stated in the opinion.

*Messrs. Chas. Hartzell* and *F. Ramírez Arellano* for the appellant.

*Mr. P. Fajardo Martínez* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was an action on an insurance ˜policy. The complaint was brought on the theory of a collision causing damages to the complainant's automobile as covered by the policy, and the District Court of Mayagüez rendered judgment in favor of complainant. The defendant on appeal maintains that the court erred in refusing to admit evidence tending to show the conditions of the contract and also in finding that there was in fact a collision as that word is to be understood.

The court in its opinion found that the evidence was contradictory; that the defendant had failed to establish its defenses, and found that the law and the facts were in favor of the complainant. Apparently the court ˜accepted the facts of the complaint recited in the opinion, namely, that on the tenth of January, 1921, at 10.30 p. m., while the insured machine was traveling on the road from Mayagüez to Maricao at a velocity of about twelve miles an hour, the lights of the machine were suddenly extinguished preventing the chauffeur of the complainant from seeing the road and that consequently he ran against a tree on the side of the road and, breaking through a wire fence, fell over a small precipice, and that the machine was completely destroyed.

There is also evidence tending to show that the automobile did in fact collide with one or more trees and some wires and then in point of time fell over the precipice.

The opinion of the court leaves it a little doubtful whether the court did not believe that there was a collision against

the tree and the wire causing the injury. But the evidence rather tends to show that the accident was caused by the automobile's leaving the highway or roadbed and that the impact with the trees and the wires was rather an incident of the fall.

The defendant having denied that the accident was caused by any collision or striking (*choque*) with any object fixed or in movement, the court found that the proof was contradictory and that the defendant had not proved any of the defenses set up by it in its answer, and that the policy was issued to cover any damage by reason of an accident or collision up to the amount of the policy and hence the judgment should be rendered for the complainant.

The first assignment of error of the appellant was that the court erred in not having admitted as proof a rider or endorsement of collision insurance and which formed a part of the policy. The policy in so many words did not insure against collision, but in the application or "*declaraciones*" it was shown that a part of the premium was for a collision. The assured paid $63 for the whole policy of which $38 was for liability, $10 for property damages and $15 for collision, all these terms being so written in English in the policy or somewhere about the policy. In the application these words occur: "collision $——— dec. full. cov." and the premium for this description was $15, and below all the descriptions of the various risks were these words: "*riesgo de colisión a base de* $895."

Unquestionably the insurance company accepted the premium of $15 to cover an accident caused by collision or "*colisión.*" The rider or endorsement which the defendant offered in evidence was refused admission because it was unsigned and because it had never been brought to the insured's notice. This endorsement then formed no part of the contract and the court did not err in refusing to admit

it in evidence. Likewise, as appellee points out, the writing refused admission does not form part of the record on appeal. We have searched for it, as it did not appear on the page to which the appellant referred. We did not find it. This is another reason for sustaining the action of the court. *Vilar* v. *El Ancora,* 29 P. R. R. 852. So that all we have in the case is the unconditional acceptance of a premium to cover the risk of collision.

The appellant maintains also that there was no collision. We consider, however, after analysis of the authorities, that if a moving automibile leaves the roadbed and falls over a precipice, striking the earth violently, there is collision within the meaning of that word when used unqualifiedly in an insurance contract. *Harris* v. *American Casualty Co.,* 44 L. R. A. (N. S.) 70, was a case where the insurance policy provided that damages to the automobile resulting from collisions due wholly or in part to upsets, should be excluded from the policy and the court held that such a clause would not operate to defeat recovery where an automobile ran off a highway bridge, was precipitated into the water below and landed at the bottom of the stream upside down, the collision not being due to the upset; the upset being rather the result of the collision. The New Jersey court first considered whether the water of the stream and the éarth beneath it were objects within the meaning of the policy and held that water and land were physical objects; an interpretation which we accepted in *People* v. *Lebrón,* 28 P. R. R. 382. That the earth is an object in this sense has been almost universally determined. Authorities are the two foregoing cases and others given in a note in 14 A. L. R. 190, including *Bell* v. *American Insurance Co.,* reported on page 179 of the same volume.

In the *Harris Case* the court went on to consider the meaning of the word *collision,* which was the act of colliding; striking together; a violent contact; according to

the Standard Dictionary; that for collision both bodies would not have to be in motion, and the court went on to suppose the case of an automobile going over a place where a highway bridge over a chasm had fallen away and was precipitated to the ground below, and asked whether it could be said there could be no recovery because the damage to the machine was caused by collision with the flat earth instead of some upright or perpendicular object.

In *Moblad* v. *Western Indemnity Co. of Dallas, Texas,* 200 Pac. (Cal. App.) 750, where the edge of the roadway gave way, causing the automobile to overturn and roll down the mountain side, the court held that the damage to the automobile from the contact with the ground was not caused solely by collision with another object within the automobile policy, citing the *Bell Case, post.* Of course, where a machine upsets and then collides, the accident is not due "solely" to the collision. In that case the words of the policy are susceptible of the construction put upon them by the court. Likewise *Stuht* v. *U. S. Fidelity & Guaranty Co.,* 154 Pac. (Wash.) 137, was decided on a similar clause.

*Bell* v. *American Insurance Company,* 181 N. W. 734, was a strong case which tended the other way. The policy in that case insured against damage by being in accidental collision during the period insured with any other automobile, vehicle or object. The facts were that the automobile gradually settled into the ground and the car tipped over striking the ground to its damage. As we have pointed out, the court held that the earth was an object and that the case did not call for the application of the principle of *noscitur a sociis,* but the court thought that there was no collision but an "upset or tip-over." The court said:

"With the definitions of lexicographers as a basis, it is easy to demonstrate that the incident resulting in damage to plaintiff's automobile constituted a collision. Thus:

" 'A collision is the "meeting and mutual striking or dashing of two or more moving bodies or of a moving body with a stationary one." Century Dictionary. "Object" is defined to be "that which is put, or which may be regarded as put, in the way of some of the senses, something visible or tangible." Webster's Dictionary. An automobile is an object. Upon the overturning of an automobile its forcible contact with the earth constitutes a "mutual striking or dashing of a moving body with a stationary one." Hence the forcible contact of the automobile with the earth on the occasion of the upset constituted a collision.'

"Upon its face this appears to be good logic, but the conclusion is neither convincing nor satisfying. One instinctively withholds assent to the result. The reason is that it makes a novel and unusual use and application of the word 'collision.' We do not speak of falling bodies as colliding with the earth. In the common parlance the apple falls to the ground; it does not collide with the earth. So with all falling bodies. We speak of the descent as a fall, not a collision. In popular understanding a collision does not result, we think, from the force of gravity alone. Such an application of the term lacks the support of 'widespread and frequent usage.' "

The court also said:

"That while it was true insurance contracts should be construed most strongly against the insurer (citing cases), yet they are subject to the same rules of constructions applied to the language of any other contract. * * * The incident causing the damage to the automobile here in question is spoken of in common parlance as an upset or tip-over. If it were the purpose to insure against damage resulting from such an incident, why should not such words, or words of similar import, have been used? We cannot presume that the parties to the contract intended that an upset should be construed as a collision in the absence of a closer association of the two incidents in popular understanding."

Contemporaneously with this decision the Supreme Court of Michigan in *Universal Service Co. et al.* v. *American Insurance Co.,* 181 N. W. 1007, held that the striking of an auto truck by the falling on to it from above of the scoop of a steam shovel with which the truck was being loaded

was a collision within a policy insuring the truck. The court, after examining some of the previous jurisprudence and making an examination of various dictionary definitions quoted in the opinion said:

"Most collisions occur in the violent impact of two bodies on the same plane or level, and it is undoubtedly true that the word is more frequently used to express such impacts than other violent impacts. But we doubt that this fact has given to the word such a common understanding of its meaning as to exclude violent impacts unless upon the same plane or level. If one machine was going up and another going down a steep hill, and they came violently together, no one would hesitate for a moment in using the word 'collision.' At what angle must the impact occur to make the use of the word 'collision' inappropriate and relieve the insurance company from liability? We are persuaded that the better rule, the safe rule, is to treat and consider the word as having the meaning given it uniformly by the lexicographers; that where there is a striking together, a violent contact or meeting of two bodies, there is a collision between them and that the angle from which the impact occurs is unimportant. In the instant case there was the violent striking together of the truck and the heavily ladened scoop; this was a collision within the meaning of the policy and rendered the defendant liable.

"Since coming to the conclusion here arrived at, and since the preparation of the foregoing opinion, the Supreme Court of Wisconsin had handed down an opinion in Bell v. American Insurance Co., 181 N. W. 733, in which that court has reached a contrary conclusion than the one we have arrived at. Notwithstanding our high regard for the opinions of that court, we are constrained to adhere to our original conclusion."

We are disposed to agree with the Supreme Court of Michigan. Ordinarily we should not say that a falling apple or any other light object collided with the earth as insisted upon by the Supreme Court of Wisconsin. This is because we are thinking of a violent or forceful impact where injury is liable to result. If one said that a falling aeroplane or a meteorite collided with the earth, while

perhaps not the most usual parlance it would not be such a use of the word as not to be permissible. We think there are many cases where gravity is the only force that the more or less forcible impact of two bodies would be called a collision. Indeed, if a brakeman negligently permitted a flying switch to strike a shed, there would be a plain collision supposing gravity was the only force, within the distinction made in the *Bell Case.* That gravity does not operate alone to produce an accident is a ready deduction from Newton's Law of Inertia, namely, that a body persists in a state of motion or a state of rest until acted upon by some other force.

As indicated by the Michigan Court, dictionaries are not to be discarded. When we say that words must ordinarily be used in a popular sense, we do not mean to say that they must be so used as everybody in the community would use them, for the usage of words depends somewhat on the education of the speaker or writer and the ordinary school instruction as to the meaning of a word is the usage given to it by the best writers and speakers. We agree with the Supreme Court of Wisconsin that words are not to be twisted out of their ordinary use, as against an insurer who draws a contract. When, however, a word is used in a contract that generically describes all violent impacts, as collision does in its dictionary definitions, it should be assumed that the parties intended everything that reasonably would fall within a definition of that word in the absence of a showing to the contrary. The very conflict as to the meaning of the word in the minds of different courts should favor the insured.

With the exception of the *Bell Case* it is doubtful whether there is any other court defining the word "collision" as appellant maintains. In the *Stuht* and *Moblad Cases* the terms of the policy excluded the particular accidents from indemnity.

The reading of the various cases convinces us that the word "collision" is used by insurers of automobiles to describe any violent striking or impact. In the *Stuht Case* for example the policy insured against damage to the automobile if caused by collision with another object either moving or stationary (excluding, however  *   *   *) and among the things excluded were "upsets." *Upset* is thus made an exception from the accepted meaning of the word "collision."

*Stix* v. *Travelers Indemnity Co.,* 157 S. W. 870, also was a case where the policy insured against damage "caused solely by collision with another object (excluding, however, . . . . . all loss or damage by striking any portion of the road-bed). This tends to show that a violent striking of the road-bed would ordinarily be considered a collision. Held that guttering, etc. was not part of road-bed.

In *Wetherill* v. *Williamsburg City F. Ins. Co.,* 60 Pa. Super. Ct. 37, summarized in Ann. Cases 1917 D, 58, the court said that collision has been defined as a violent contact, a striking together. In the second paragraph of this rider it speaks of the company's not being liable for damage caused by striking any portion of the gutter. The policy nowhere refers to the company's being liable for striking anything unless "collision" and "striking" were used synonymously. "Striking" is the defendant's own definition of the word "collision."

The curbing or curbstone of a street was in *Gibson* v. *Georgia Life Ins. Co.,* 86 S. E. 335, held to be such a portion of the road-bed as to preclude one whose automobile had been damaged by collision therewith. This is another case where the insurer excluded from "collisions" the striking of the road-bed. And a previous case, *Hanvey* v. *Georgia Life Ins. Co.,* 81 S. E. 206, of the same Georgia court is to the same effect. There the automobile left the road, went through a ditch and struck the embankment on

the other side, the plaintiff recovering. See also *Southern Casualty Co.* v. *Johnson,* 207 Pac. 987.

Thus we have a great number of insurance companies giving the meaning to the word "collision" that would enable the appellee to recover. As a practical construction this use *might* not be binding on appellant, but where the dictionary definitions and the use in described policies concur, we are justified in concluding that the word "collision" in insurance policies, used unlimitedly, includes the going over a precipice and the striking of the earth beneath.

That this species of risk is known as collision insurance may readily be deduced from Huddy on Automobiles. After devoting sections to Fire Insurance and the like, he treats of Collision Insurance, sections 815 to 822. In section 817 he speaks of "collision insurance,—exception for damage in striking a portion of road." In section 818 of "Collision Insurance,—exception in case of upset of machine." All these authorities show that the exceptions merely point the rule of the meaning of the word "collision" when used unqualifiedly."

For a practical construction we have the attitude of the parties themselves. In the letter of the agents to the insured denying liability they say that there was no "*choque*" (striking) causing the upset, tending thus to show an insurance against "strikings."

Likewise in its brief the appellant assigns as error that the court found that there had been a "striking" (*choque*).

But we think also that the claim of complainant is admitted by the pleadings. The third paragraph of the complaint said that the complainant was insured in the sum of $895 for any damage that the automobile might undergo by reason of accident or collision. "Accident" and "collision" are both used and the words are necessarily broad enough to cover this happening. The defendant answered that it admitted the third clause of the complaint, but that the dam-

ages covered were those that happen from accident (*sic*) in accordance with the terms of the policy. The defendant when it framed this answer was probably thinking of the rider or endorsement which never became part of the policy. There is an admission of liability in the answer, once it is shown that the policy contained no limitation of the kind contended for.

For similar reasoning upon the general aspects of the matter, see the case of *Young* v. *New Jersey Ins. Co.*, 284 Fed. 492, found after the publication of the opinion and judgment.

The judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Aldrey, Hutchison and Franco Soto concurred.