# HARRY E. SHADLEY, Respondent, v. GRAND LODGE OF THE BROTHERHOOD OF RAILROAD TRAINMEN, Appellant.

### St. Louis Court of Appeals. Opinion Filed July 10, 1923.

1. **INSURANCE: Fraternal Organizations: Benefit Certificate: Open to Two Constructions: One Most Favorable to Insured Adopted.** If a contract of life insurance is reasonably open to two constructions, the one most favorable to the insured must be adopted whatover the classification of the insurer may be in the calendar of fraternal organizations.

2. ———: ———: ———: **Refusal to Receive Premiums: Rescission: Insured May Rescind and Recover Premiums Paid.** If the payment an assessment on an insurance contract is refused and the insurer refuses to perform its contract, then the insured has the right to rescind the contract and sue to recover the assessments of premiums paid.

3. ———: ———: ———: **Answers: Strikes: Expulsion: Grand Lodge Revoking Charter of Local Lodge: Ineffectual as a Defense in Action to Recover Assessments Paid.** In an action for breach of contract for life insurance, brought on a petition alleging that defendant, a Brotherhood Lodge of Railroad Trainmen, refused to accept the monthly assessment required by the terms of the contract, an answer, relying on expulsion, and pleading certain sections of its constitution and by-laws, from which it was averred that the refusal to accept the assessment was justified in that under the laws of the order the president of the Grand Lodge had revoked the charter of the subordinate lodge to which plaintiff belonged for misconduct of the lodge in relation to a strike, and he did not in turn make application to join some other lodge, and hence plaintiff was not at the time named in his petition a member in good standing, as he had forfeited his membership and all rights under the order and that his benefit certificate was null and void, reviewed and *held* not to state facts sufficient to constitute a defense; that plaintiff holding such insurance certificate in defendant organization had a property right growing out of such contract which could not be taken from him except for a forfeiture expressed in the contract or the laws of the order applying thereto; that there was no showing of any definite affirmative action taken by defendant in strict accordance with its laws sufficient to destroy such right; and consequently the action of the trial court in sustaining a general demurrer to such answer was correctly ruled.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Moses Hartmann*, Judge.

AFFIRMED.

*Edward J. McCullen* for appellant.

(1) The court erred in sustaining respondent's
(plaintiff's) demurrer to appellant's (defendant's)
amended answer. (a) Appellant association having
pleaded in its amended answer facts showing the nature
and character of the association, its objects, purposes
and methods of carrying on its affairs, is exempt from
the general insurance laws of the State. R. S. 1919, secs.
6398 et seq. Newland v. Modern Woodmen of America,
168 Mo. App. 311, 153 S. W. 1097; Gilmore v. Modern
Brotherhood of America, 186 Mo. App. 445, 171 S. W.
629. (b) Appellant's membership being limited to "one
hazardous occupation, to-wit, Railroad Trainmen," ap-
pellant is exempt even from the provisions of the fra-
ternal beneficiary insurance statutes of the State. R.
S. 1919, sec. 6429. (c) The contract of insurance in this
case will, therefore, be construed, not more strongly
against appellant, but in accordance with the fair and
reasonable meaning and intention of the parties as ex-
pressed by themselves in the contract itself, to-wit: The
application beneficiary certificate, the Constitution, Laws
and General Rules of appellant association. Claudy v.
Royal League, 259 Mo. 92, 168 S. W. 593; Brittenham
v. Sovereign Camp, Woodmen of The World, 180 Mo.
App. 523, 167 S. W. 587. (2) The laws of appellant
association giving the president of the Grand Lodge su
preme power, in an emergency caused by an "unauthor-
ized strike," were made by delegates chosen directly by
the members themselves from amongst their own num-
ber, in their respective subordinate lodges, and neither
the president of the Grand Lodge, nor any other Grand
Lodge officer, had any vote in the making thereof. Or-
ganizations of the character of appellant association

have a right to prescribe reasonable grounds and methods for expulsion, and courts will not examine into the technical practices of either the proceedings prescribed or followed, unless clearly subversive of personal or property rights. Callahan v. Order of Railway Conductors of America, 169 Wis. 43; 29 Cyc. 201. (3) Plaintiff violated the laws of his association; he violated a solemn agreement which his association had made with his employer and which he was bound to respect and observe; he willfully and deliberately took part in and persisted in an unlawful and unauthorized strike; his conduct called for and warranted expulsion from the association under General Rule No. 11. The refusal of the lodge to place charges against him brought into operation the supreme emergency power given to the president of the Grand Lodge to protect the order from disaster and the charter was revoked. Had plaintiff attempted to be reinstated by mandamus no court on such facts would have ordered his reinstatement. State ex rel. Young v. Temperance Society, 42 Mo. App. 485; State ex rel. Mayfield v. St. Louis Medical Society, 91 Mo. App. 76; Bosse v. Knights and Ladies of Security, 204 Mo. App. 18, 220 S. W. 993; State ex rel. v. Martin, 195 Mo. App. 366, 191 S. W. 1064. (4) The rights of a member of such an association as appellant must be settled in accordance with the provisions of the laws of the association and every available remedy within the order must be exhausted before the aid of courts can be invoked. By the action of the president the lodge became a "defunct lodge." By his refusal to take advantage of the simple remedy of applying for a dispensation and transfer when directed so to do by the president of the Grand Lodge, and furnished a blank form for that purpose, plaintiff refused to avail himself of the means which the rules of the association afforded him to protect his rights. Correia v. Supreme Lodge of Portuguese Fraternity of United States of America, 218 Mass. 305, 105 N. E. 977; Brotherhood of Railroad Trainmen v. Swearingen, 161 Ky. 665, 171 S. W. 455; Bonhan v.

Brotherhood of Railroad Trainmen, 146 Ark. 117, 225 S. W. 335; Easter v. Brotherhood of American Yeoman, 172 Mo. App. 292, 157 S. W. 992. (5) (a) Section 42 of Grand Lodge Constitution, enumerated the several reasons for which the charter of a subordinate lodge might be revoked upon charges against, notice to, and a trial of the lodge itself. In this section 42 an "unauthorized strike" is not named at all. Section 42, therefore, did not apply. General Rule No. 22 of equal authority and equally binding upon all officers and all members emanating from the same source of power, to-wit: The Grand Lodge Convention made up of member delegates of the subordinate lodges, specifically named "an unauthorized strike" as a separate and supremely important matter to be dealt with separately, promptly and effectively as an emergency by the president of the Grand Lodge. Solari v. Italian Society of Columbus, 211 Mass. 382, 97 N. E. 765; Callahan v. Order of Railway Conductors of America, 169 Wis. 43, 171 N. W. 653. (b) No trial of the offending member, or members, who were engaged in the unauthorized strike was possible. The subordinate lodge which, under General Rule No. 11 was required to prefer charges and try and, if found guilty, expel the member, or members, was itself, officers and members together, in open rebellion against the association. The subordinate lodge refused to perform its plain duty. The individual members could not be tried until the lodge made charges against them. This the lodge refused to do. The decisions and interpretations of the president of the Grand Lodge, under sections 9 and 85, Grand Lodge Constitution and General Rule No. 11 as ratified, confirmed and approved by the Grand Lodge "whose enactments and decisions upon all questions are the supreme law of the Brotherhood" and acquiesced in by the membership and subordinate lodges as the correct practice, custom and usage of the association made it the plain duty of the president to revoke the charter of the subordinate lodge in the manner he did. Callahan v. Order of Railway Con-

ductors of America, 169 Wis. 43, 171 N. W. 653. (6) In view of the provisions of Section 1, Grand Lodge Constitution and the allegation that "membership in defendant association was and is obtained and held only through membership in a subordinate lodge holding a legal and unreclaimed charter" plaintiff abandoned and forfeited his membership, his beneficiary certificate and all benefits thereunder when he refused to avail himself of the simple and plain remedy offered him by the president of the Grand Lodge, to-wit: To make application for dispensation and transfer to another lodge, a remedy involving not the slightest hardship on him, since blanks were furnished to him for that purpose. Easter v. Brotherhood of American Yeomen, 172 Mo. App. 292, 157 S. W. 992; Pavlick v. Supreme Lodge Knights of Pythias, 198 Mo. App. 184, 199 S. W. 445. (7) The president of the Grand Lodge, in revoking the charter of the subordinate lodge, acted in accordance with the plain meaning and the established and approved interpretation of the Constitution and General Rules of the Association with respect to an "unauthorized strike." Plaintiff and the other striking and rebellious members justly merited expulsion under General Rule No. 11, in view of the fundamental purpose of appellant association—"harmonious relations"—with employers of railroad trainmen. Having willfully violated the laws of his own making, he cannot complain of the penalty. Schulz v. Supreme Tent Knights of Maccabees of the World, 236 S. W. 903; Brittenham v. Sovereign Camp Woodmen of the World, 180 Mo. App. 523, 167 S. W. 587.

*F. H. Bacon* and *J. J. O'Donohoe,* for respondent.

(1) The appellant has a dual nature; it is a trade union and a life insurance company, and this fact must necessarily be kept in view because the governing principles of law may apply to the appellant in its character as an insurance company which would not be applied were it simply a trade union and *vice versa.* (a) The

42—211 M. A.

appellant is a trade union, uniting under one governing authority a certain class of railroad employees for whom it assumes to act, making contracts with railroad companies for labor as for a commodity. The individual has nothing to say concerning conditions of employment or wages. He must work or quit work, as ordered. True, every four years the lodges send a representative to a convention, supposed to enact laws and rules, but that is dominated by a few. In recess it is claimed, as in this case, that the president has dictatorial powers and can expel a member whenever he thinks expulsion is de-deserved, without regard to the formalities of a trial. No one can obtain employment as a switchman unless he is a member of the union. In this respect the society falls under the ban declared by this court in Froelich v. Musicians Union, 93 Mo. App. 391. (b) The society is, however, engaged in a lawful and useful business, namely, that of issuing to its members policies of life insurance, and the rights of its policyholders will be protected by the courts. The principles of law applicable to life insurance contracts apply to the policies of this organization as in the case of other associations doing a life insurance business. (2) The measure of damages for an unlawful refusal by a life insurance company to accept assessments, or premiums, is the amount paid to the company, with interest thereon. McKee v. Phoenix Insurance Co., 28 Mo. 383, 386; Tutt v. Covenant Mutual Life Ins. Co., 19 Mo. App. 677; Suess v. Life Insurance Company, 64 Mo. App. 1-12. (3) The contract between the plaintiff and defendant is found in the certificate or policy sued on and the constitution and laws referred to therein. (4) The rights of the members of an association of the nature of appellant rest in contract. This contract being one of insurance involves a property right. It follows that the rights of the members can only be divested in the manner and by the procedure specified in the contract. If the contract does not provide for *ipso facto* expulsion, or forfeiture, for some act of the member, positive and affirmative action must be

taken by the society in the manner provided in its laws.
Seehorn v. Supreme Council, 95 Mo. App. 233; Mulroy
v. Knights of Honor, 28 Mo. App. 463. (5) The ad-
mitted refusal of an assessment duly tendered is at-
tempted to be justified by an allegation to the substan-
tial effect that plaintiff was expelled. The only justifica-
tion of such expulsion is that it resulted because of the
act of the president of the society revoking the charter of
the lodge because its members went on an unauthorized
strike and the neglect of plaintiff to make application for
a card to join another lodge, although the laws of the
society provide that no charter shall be revoked except
after notice and opportunity to be heard. No such notice
was given. It is claimed that, by an approval of a ruling
of the president, a by-law had been pratcically adopted
that in an emergency the president need not observe the
formalities required for the suspension of a lodge. Al-
though law No. 11 provides that if a member engages
in an unauthorized strike he shall upon conviction there-
of be expelled, it is contended that the conviction means
a conviction by the president and that it is unnecessary
to prefer charges or have a trial. Substantially the claim
is that in an emergency the president of the society need
not follow the laws of the society, but can expel a member
without a trial. The law in regard to proceedings for
the expulsion of a member of an association like this has
been declared in many cases. There must be legally suffi-
cient charges preferred, notice to the accused given and
a trial had by a lawful tribunal. Ludowiski v. Polish
Roman Catholic etc. So., 29 Mo. App. 337; Slater v. Su-
preme Lodge, 76 Mo. App. 387; Golden Star Lodge v.
Watterson, 158 Mich. 698; Swaine v. Miller, 72 Mo. App.
446; Grand Grove etc. v. Garibaldi Grove, 131 Calif.
115; Independent Order Sons and Daughters of Jacob
v. Wilkes, 98 Miss. 179. (6) The rule in regard to ex-
hausting remedies within the order has no application
in a case like this, and the authorities cited by counsel
for appellant have no bearing on the questions involved
here. Hoeffner v. Grand Lodge, 41 Mo. App. 359; Malm-

sted v. Minneapolis Aerie etc., 111 Minn. 119. See also cases cited in the preceding paragraph. (7) The demurrer to the answer is to the affirmative defense set up in the answer as a whole. A demurrer tests the sufficiency of the facts well pleaded. It is true that the answer alleges plaintiff was guilty of a violation of a rule of the defendant and being guilty was expelled, but no lawful expulsion was pleaded and hence the answer is insufficient. Verden v. City of St. Louis, 131 Mo. 26; McKenzie v. Mathews, 59 Mo. 92. (8) The answer discloses no legal justification for the refusal to accept the assessment which it admits was tendered because it only alleges a summary expulsion by the act of the president of the society.

DAUES, J.—This is an action for breach of a contract for life insurance, brought by plaintiff on a petition alleging that defendant refused to accept the monthly assessment required by the terms of the contract; that such refusal constitutes a repudiation of the contract justifying plaintiff to rescind the contract and to recover assessments theretofore paid as for money had and received.

The answer, fully discussed hereinafter, admits the issuance of the certificate; alleges that plaintiff lost his membership and forfeited his rights to all payments and assessments made by him theretofore. Plaintiff challenged the answer by general demurrer which the court sustained. Defendant declining to plead further, the court rendered judgment for $288, the amount admitted by the answer as having been paid by plaintiff to the defendant, including interest. From this judgment defendant has appealed.

The petition alleges that defendant is a voluntary association and as such insures the lives of its members; that in April, 1904, defendant issued a beneficiary certificate or insurance policy to plaintiff which provided for a monthly payment of $1.50 and named plaintiff's mother as the beneficiary; the face of the policy was for

$1600; that plaintiff paid the monthly installments regularly up to April 30, 1920, but that on that date he tendered his assessment and defendant refused to accept same, disclaiming any liability under said certificate of insurance. It is then alleged that such refusal to accept payment was unjustifiable and unlawful and that plaintiff had paid 192 monthly instalments, for which judgment is prayed.

Defendant's answer, as amended, admits that it is a voluntary association and engaged in insuring the lives of its members, and that it issued the beneficiary certificate referred to in the petition; admits that plaintiff made and defendant declined the tender of the assessment on the day named; that plaintiff had paid former assessments as set out in the petition, but denies that the refusal to accept this payment was in repudiation of its contract with the plaintiff, and denies that plaintiff complied with his contract or that defendant unjustifiably or unlawfully refused to accept the tender.

The answer pleads certain sections of defendant's constitution and by-laws, from which it is averred the refusal to accept the assessment is justified.

First is the preamble of the constitution which designates the purpose of the defendant Brotherhood as an unincorporated association and limits the membership to railroad trainmen, a class of persons engaged in a hazardous calling. Section I of the constitution provides for a lodge system; provides that no profit is to be made, but that a monthly assessment of members is to be made from which benefits are to be paid in case of death. The answer then sets out sections 6, 9, 42, 43, 44, 79, 85 and 86 of the constitution, and numbers 8, 9, 10 and 11 of the general rules.

Section 6 defines the authority of the Grand Lodge.

Section 9 defines the authority of the president of the Grand Lodge, and in part is as follows:

"He shall be empowered to adjust all grievances referred to him in conformity with the General Rules. He shall interpret all laws pertaining to the Brotherhood

and shall decide all controversies or appeals referred to him by subordinate lodges or members thereof. Such decisions shall be final, unless reversed by the Board of Directors at their first meeting after such decisions have been rendered. . . . He shall have power to suspend or remove any subordinate lodge officer for a sufficient cause. . . . He may issue dispensations not inconsistent with this Constitution to facilitate the business of the Brotherhood.''

Section 42, so much as is here pertinent, follows:

"'The charter of any subordinate lodge may be suspended or revoked by the president of the Grand Lodge for any of the following reasons: Improper conduct, refusal or neglect to conform to the Constitution and General Rules and regulations of the Brotherhood; neglecting or refusing to make its returns and reports; . . . for neglecting or refusing to bring an officer or member to trial when directed to do so by the president; or for failing to impose the penalties provided for by the Constitution on members convicted of any misdemeanor . . . but the charter shall not be suspended for any of the foregoing reasons until the lodge has been notified and an opportunity given to answer charges made against it. Should a lodge refuse to answer charges made against it, the charter shall be suspended or revoked as the president may determine.''

Section 43 provides that a lodge shall become defunct if the charter of same has been surrendered or reclaimed.

Section 44 provides that a member of a defunct lodge may be granted a dispensation to join another lodge upon application to the president of the Grand Lodge, such dispensation to be treated as a card of withdrawal when presented to a lodge for admission.

Section 79 provides that the constitution and general rules shall govern all beneficiary certificates already issued or to be issued.

Section 85 provides that the constitution and general rules shall be interpreted according to their ''most

plain and obvious meaning,'' doubts arising to be decided by the president of the Grand Lodge.

Section 86 provides for the changing of the constitution and general rules by the Grand Lodge.

The general rules pleaded, in substance, are as follows: Numbers 8, 9 and 10 provide for a method for members of the organization to take up and adjust grievances with their employers by amicable conferences. Rule No. 10 provides also that the president of the Grand Lodge, with certain other officials, shall have authority to appropriate the funds of the organization necessary to prosecute strikes.

General Rule No. II, about which much of this controversy hinges, is as follows:

''Any member or members inciting a strike, or participating therein, except as provided in general rule No. 10, shall, upon conviction thereof be expelled. The lodge under whose jurisdiction an unauthorized strike occurs shall, within ten days thereafter, cause charges to be preferred against any and all members engaged in such strike. While under charges for engaging in an unauthorized strike no member shall be granted a traveling, transfer or withdrawal card. If within ten days the lodge does not cause charges to be preferred against members engaged in the unauthorized strike, the charter of the lodge may be revoked by the president of the Grand Lodge, who may transfer to other lodges the members not participating in such strike.''

The answer, reverting again to the constitution of the lodge, sets out section 74, which, in part, is as follows:

''No claim shall be paid by the General Secretary and Treasurer unless the member to whom the certificate was issued was in good standing on the grand register at the time of his death. . . .''

Section 123 of the constitution:

''Membership by dispensation may be gained by depositing a dispensation from the president of the Grand Lodge, which shall be received and acted upon in accord-

ance with the laws governing admissions by withdrawal cards.''

Section 157 provides for application for withdrawal cards and the granting thereof.

After setting out the above provisions of defendant's laws, the answer alleges that plaintiff prior to April 8, 1920, was a member of Lodge No. 472, located in the City of St. Louis, and as such was subject to the laws and rules of the defendant association; that the defendant on February 1, 1918, entered into an agreement with the Terminal Railroad Association of St. Louis with respect to hours and wages, etc. It is alleged that this schedule was not to be changed except on thirty days' notice from either party; that plaintiff, a member of the St. Louis lodge and in the employ of said railroad association as trainman, together with the other members of the subordinate lodge, withdrew their employment from said railroad and engaged in an unauthorized strike contrary to the aforesaid agreement.

It is then alleged that this subordinate lodge was notified by the president of the Grand Lodge to terminate the strike and that a failure to do so would result in the withdrawal by the president of its charter; that plaintiff and the other members refused to desist in the strike, and as said subordinate lodge failed and refused within ten days to cause charges to be preferred against plaintiff and such members of the lodge, as required by general rule No. 11, the president of the Grand Lodge under such rule No. 11 revoked the charter, and under section 43 of the constitution of the order said lodge became defunct.

The answer further alleges that the president of the Grand Lodge under sections 9 and 85 of the constitution "did interpret said Constitution, Laws and General Rules and decided that General Rule No. 11 was the only law and rule applicable to the emergency caused by the said unauthorized strike . . . and the failure and refusal of the said Lodge 472 to prefer charges against the said plaintiff and said officers and members, and that

said general rule No. 11 was intended to and did give the said president full power and authority to revoke and reclaim the charter of any subordinate lodge which should fail and refuse to prefer charges against its members engaging in such unauthorized strike within ten days after having its attention directed thereto in writing by said president." The answer avers that such interpretation had been given the laws of the organization for many years and were accepted and acquiesced in by the Grand Lodge and subordinate lodges; that the subordinate lodge had been notified that the charter had been withdrawn, giving the reasons therefor and directing plaintiff and the other members of the subordinate lodge to apply for dispensation and transfer in accordance with section 44, supra; that plaintiff failed to fill out and return any application for such transfer.

Finally, it is charged that plaintiff therefore was not at the time named in the petition a member in good standing; that he had forfeited his membership and all rights under the laws of the order, and that his beneficiary certificate is null and void.

We are met at the outset with a disputation of counsel as to a proper classification of the defendant association. Defendant, appellant here, insists that it is exempt from the general insurance laws of the State under section 6398, Revised Statutes 1919, which defines and exempts fraternal benefit societies from the general insurance laws, and that since the membership in the organization is limited to those of hazardous occupation, it is exempt from the provisions of the fraternal beneficiary insurance statutes of the State, and therefore, it is argued, the contract of insurance in this case must be construed not more strongly against the appellant but in accordance with the fair and reasonable meaning and intention of the parties as expressed in the contract.

The defendant orgnization is, as it appears, first a trade union, or labor organization, and with that feature we are not here concerned, but as such it issues to its members contracts known as certificates for benefits to be

paid to a beneficiary in case of death of the insured member. The organization insures the lives of its members for a specific sum to be paid as a monthly assessment. The contract between the plaintiff and the defendant, if a contract at all, is one for insurance. It is an obligation to pay the beneficiary of the certificate a certain sum of money in the event of the death of the insured. We hold that if this contract is reasonably open to two constructions, the one most favorable to the insured must be adopted, whatever the classification of the defendant may be in the calendar of fraternal organizations. [Mathews v. Modern Woodmen, 236 Mo. 326, 139 S. W. 151; Cunningham v. Union Cas. & Surety Co., 82 Mo. App. 607; Sonders v. Commonwealth Cas. Co., 246 S. W. 613; Stix v. Indemnity Co., 175 Mo. App. 171, 157 S. W. 870; Still v. Insurance Co., 185 Mo. App. 550, 172 S. W. 625; 1 Joyce on Insurance (2 Ed.), 574, 575, 581.]

There is ample authority in this State for the principle that if the payment of an assessment on an insurance contract is refused and the insurer refuses to perform its contract, then the insured has the right to rescind the contract and sue to recover the assessments or premiums paid. [McKey v. Phoenix Ins. Co., 28 Mo. 383; Tutt v. Covenant Mutual Life Ins. Co., 19 Mo. App. 677; Suess v. Life Ins. Co., 64 Mo. App. 1.]

Plaintiff and the other members holding insurance certificates in defendant organizaton have a property right growing out of such contract which cannot be taken away from such members except for a forfeiture expressed in the contract of the laws of the order applying thereto.

Defendant's answer relies upon expulsion; the answer must therefore show some definite affirmative action by defendant taken in strict accordance with its laws to destroy such right. There must be alleged some law of the order under which plaintiff could be and was expelled which carried with it a forfeiture of his rights under the certificate.

Now, it is contended by appellant that plaintiff was

expelled and accordingly lost all rights in this policy because the president of the organization revoked the charter of the local lodge for misconduct of the lodge in relation to a strike, and because this plaintiff did not in time make application to join some other subordinate lodge. Under Rule No. 11, supra, it is provided that if a member engages in an unauthorized strike he "shall, upon conviction thereof, be expelled." Conviction carries with it the necessity of filing charges and affording the accused an opportunity to be heard. Plaintiff was not confronted with charges, nor was he tried for engaging in an unlawful strike. This rule (11), as will be seen, does not provide a penalty to be imposed on the offending member, even after conviction, to the extent that his life insurance contract shall be forfeited.

It is against the policy of our law to allow an insurance company or a society issuing insurance contracts to arbitrarily forfeit without a trial or opportunity to defend a contract of insurance issued by same, for the rights of such policy or certificate holders stand on contract and one that embraces a property right. Where the expulsion carries a defeat of the insurance with it, the member of the organization must be afforded every opportunity to protect his rights unless such right is denied by the contract or laws of the organization made a part of the contract. [Ludowiski v. Polish Roman Catholic, etc., Society, 29 Mo. App. 337; Slater v. Supreme Lodge, 76 Mo. App. 387; Golden Star Lodge v. Watterson, 158 Mich. 696, 123 N. W. 610; Swaine v. Miller, 72 Mo. App. 446.]

It should be observed that in the instant case neither the certificate, which is referred to as being in usual form, nor the organization's constitution or by-laws, provides for an *ipso facto* expulsion of a member who engages in an unlawful strike. Nor does the constitution and laws of the organization provide a penalty if a member of a defunct lodge fails to apply or join another subordinate lodge, although provision is made in case of non-payment of assessments, fixing a penalty of *ipso*

*facto* suspension, and no provision is made for the payment of assessments by the members of a defunct lodge.

Learned counsel for respondent in their brief set out section 144 of the constitution of the order, which provides for a trial of a member before expulsion may follow. However, such is not in the pleadings and is not before us.

The president of the Grand Lodge has interpreted Rule No. 11 to mean that he possessed the power to revoke the charter of the lodge without notice in case of an emergency, and that all members therein became expelled by such action. Leaving aside the rule requiring trial which respodent says is omitted from the defendant's answer, we cannot escape the conclusion that Rule No. 11 contemplates notice, charges and a trial, and the view is not justified that the president has the power to construe this rule to mean that conviction may be arbitrarily made by him without any notice to the member. But, as said before, the rule nowhere provides that in the event a member fails to make application after his lodge becomes defunct he is thereby *ipso facto* suspended, as obtains in the event such member fails to pay his assessment. Section 42 of the constitution, which seems to cover the matter of suspension of lodges and the revocation of lodge charters, definitely provides for notice and trial, but this section was not depended upon the president of the Grand Lodge in this case.

Learned counsel for appellant in his reply brief concedes the following:

"It is true that the laws of appellant association do not specifically state in so many words that a member forfeits all his rights *'ipso facto'* by participating in an 'unauthorized strike.' It is also true that the laws do not specifically state in so many words that a member whose lodge has lost its charter loses all rights by failing to transfer within thirty days, but the intention of the parties in this case is so obvious and clear that such provisions would not have made it any clearer."

Counsel, however, clings to the argument that be-

cause defendant is not an insurance company, nor an "ordinary fraternal beneficiary association," that therefore the contract should be construed to mean that a member forfeits all his rights, including his insurance rights "*ipso facto*" by participating in an unauthorized strike. We are not disposed to substract the force of a single word from the constitution and laws of the order. We are not authorized, however, in this suit, which involves the construction of a policy or certificate for life insurance, to resolve a doubt in favor of the insurer and against the insured. The converse is true. The contract does not, and so appellant's counsel admits, provide "that a member forfeits all his rights *ipso facto* by participation in an unauthorized strike," and we are not permitted to read such provision into the contract. We must in this character of case be able to put our finger on some provision of the contract, with the constitution and rules of the organization drawn in, which clearly gives the right to forfeit this certificate, and, further, it must definitely appear that such forfeiture of the rights under the policy was in fact regularly consummated by the defendant.

It does not follow that because the charter of the local lodge was revoked, or because plaintiff had been deprived of the right to participate in the meetings of the order that plaintiff has not certain rights under his certificate of insurance, and that such rights may not be protected by the courts. [Crutcher v. Order Railroad Conductors, 151 Mo. App. 622, l. c. 630, 132 S. W. 307.] We have examined the other points made by learned counsel for appellant, and conclude they are not well founded.

We hold that the court below properly ruled the plaintiff's demurrer, as defendant's answer does not in our opinion set forth facts sufficient in law to constitute a defense to plaintiff's cause of action. Accordingly the judgment is affirmed. *Allen, P. J.*, and *Becker, J.*, concur.