The State ex rel. Missouri State Highway Board to Use and Benefit of Fredonia Portland Cement Company v. Argus Cox et al., Judges of Springfield Court of Appeals.—1 S. W. (2d) 787.

Division One, December 7, 1927.

*J. T. Cooper* and *W. R. Robertson* for relator.

*Owen & Davis* for respondents.

RAGLAND, J.—This is an original proceeding in *certiorari* wherein the relator seeks to have quashed, on the ground of conflict, the record of the Springfield Court of Appeals in a case entitled: "Missouri State Highway Board for the Use and Benefit of the Fredonia Portland Cement Company, respondent, v. Southern Surety Company, appellant," lately pending before it on appeal from the Circuit Court of Jasper County. The ruling of the Court of Appeals and the facts on which it was based appear from its opinion which follows: .

"This is an action on a surety bond executed in connection with a road construction contract. The cause was tried before the court without a jury. Relator recovered and defendant surety company appealed.

"The petition was filed against the Carterville Construction Company, Southern Surety Company and several individuals, but the record here does not disclose what disposition was made as to defendants other than the Surety Company.

"The petition alleges that on March 20, 1922, defendants, other than the Surety Company, entered into a contract with the Missouri Highway Board for the construction of about five miles of highway running from Clinton, Henry County, Missouri, and known as Project 81; that the defendant executed and delivered to the Missouri Highway Board a bond in the penal sum of $88,736, wherein and by the terms of which defendant bound itself to pay all lawful claims for materials furnished in the construction of said highway; that relator, Cement Company, between October 24, 1923, and June 13, 1924, sold and delivered to the contractor, Carterville Construction Company, cement of the reasonable value of $10,473.90, which cement was used in the construction of said highway; that only $4,398.98 on said account had been paid, leaving a balance due the Cement Company of $6,076.92, with interest from January 1, 1925.

"Defendant Surety Company, after its demurrer to the petition was overruled, answered by admitting the execution of the bond, and denied generally other allegations. Further answering defendant averred that if the Carterville Construction Company was indebted to the Cement Company on account of cement or other supplies in the construction of `said highway, the Construction Company on December 18, 1923, without the knowledge or consent of defendant Surety Company executed and delivered to relator Cement Company its certain promissory note payable in sixty days to the Cement Company for the sum of $4060.60; that said note was given in payment of the account to the extent of the note; that at the maturity of the note the Cement Company, without the knowledge or consent of defendant, extended said note for sixty days. Defendant further avers that the Carterville Construction Company without the knowledge or consent of defendant executed and delivered to the Cement Company another note in payment of the balance of the account, which last-mentioned note was due in sixty days from date, and was for $789.25; that the Cement Company when the last-mentioned note fell due, without the knowledge or consent of defendant, extended said note for sixty days. It is averred in effect that by reason of the acceptance of the notes the Cement Company released defendant Surety Company on its surety obligation.

"Relator replied by a general denial and alleged that defendant Surety Company was a surety for hire and was protected by collateral security from the Construction Company. Defendant moved to strike the reply, except the general denial, but the motion was overruled.

"Error is assigned (1) on the overruling of the demurrer to the petition; (2) on the refusal of the demurrer to the evidence at the close of the case; (3) on the refusal of certain declarations requested; (4) on the admission of evidence; and (5) on the overruling of the motion to strike.

"Defendant contends that the petition is fatally defective in that it discloses no authority in what is called the Missouri Highway Board to prosecute this cause or any cause. It is contended that there was not at the time the cause was filed and is not now any legal entity or body of individuals known as the Missouri Highway Board, and that, therefore, the petition cannot support a judgment and that the point may be raised at any time, notwithstanding the answer over, after the general demurrer was overruled. If the petition states no cause of action then the point may be raised at any time. [Colvin v. Gideon & N. I. Ry. Co., 200 S. W. (Mo. App.) 715.] And by answering over the question of the capacity of the so-called State Highway Board to maintain the cause to the use of the Cement Company was not waived. [Sells v. Railroad, 266 Mo. l. c. 177, 181

S. W. 106; State ex rel. Dockery v. Hubbard, 199 Mo. App. 137, 203 S. W. 250.]

"A State Highway Board was created in 1917. [Laws 1917, p. 485.] The Act of 1917 provided that the State Highway Board should be composed of four members, residing in different sections of the State, to be appointed by the Governor; by and with the advice and consent of the Senate. The members were to be chosen, two each from the two dominant political parties. In 1919 (Laws 1919, p. 650), the Act of 1917 creating the highway board was amended, but the board composition and appointment remained the same. The Act of 1919 appears in the Revised Statutes of 1919 as Section 10890. Section 8b of the Act of 1919 (Laws 1919, p. 656) provided that a successful bidder on a road construction contract should enter into a bond in the penal sum of the contract to be approved by the highway board, or by some person designated by the board. The bond was to be conditioned for the faithful performance of the contract according to plans and specifications and the payment for all materialmen and laborers. Section 8b of the Act of 1919 was carried into the Revised Statutes of 1919 as Section 10898.

"In 1921, Sections 10890 and 10898, Revised Statutes 1919, together with other sections, were repealed. [Laws 1921 (Ex. Sess.) p. 133 et seq.] Section 4 of the Act of 1921 created a State Highway Commission. Section 5 of the act provides that the commission shall be composed of four members appointed by the Governor by and with the advice and consent of the Senate. Section 5 provides that the State Geologist shall be a member ex officio, but have no vote. Section 25 of the Act of 1921 provides that the successful bidder shall give a bond in the sum of the contract price, said bond to be given to the State of Missouri, and approved by the commission. The bond mentioned is not required to cover materialmen and laborers. Section 2 of the Act of 1921, provides that Sections 10896 to 10905 inclusive and Section 10907, Revised Statutes 1919, remain in force until the road projects approved under said sections were completed, but the sections were not to remain in force later than December 31, 1922. The duties of the highway board were to be discharged by the State Highway Commission.

"The bond sued on in the cause at bar was executed March 20, 1922. The account of the Carterville Construction Company with the Cement Company was made between October 24, 1923, and June 13, 1924. Thus we see that the State Highway Board had ceased to exist long prior to the execution of the bond or the making of the account.

"None of the acts mentioned above provided that the contractor's bond be made to any board or commission. Section 8b of the Act of 1919 (Laws 1919, p. 656) provided for a bond, to be approved by

the State Highway Board, but made no provision for the bond to be made to the board. The Act of 1921, as above stated, provided for a bond to the State of Missouri and to be approved by the State Highway Commission. Project 81 was a state project, and the bond by Section 1040, Revised Statutes 1919, was required to be made to the State. However, had there been in existence, at the time the bond here was executed, a State Highway Board, a different situation would be presented. [Missouri State Highway Comm. ex rel. Licking State Bank v. Coopers Const. Co., 286 S. W. (Mo. App.) 736.] But there was at that time no State Highway Board in existence, and the bond may as well have been made to John Doe.

"The State Highway Board had no existence when the bond was executed. The question, therefore is: Can a non-existent party, named as obligee in the bond, maintain this cause for the use of the Cement Company? Counsel cite State ex rel. Bell v. United States Fidelity & Guaranty Co., 236 Mo. 352, 139 S. W. 163, as supporting the contention that this cause can be maintained in the name of the State Highway Board. But in that case the State brought the suit, but named the wrong party as the real party in interest. Also in that case the petition was not challenged by demurrer. The case cited was a suit on the bond of a defaulting treasurer of State Hospital No. 1. The suit was brought in the name of the State at the relation and to the use of the succeeding treasurer of the hospital. The contention was made that the suit should have been brought at the relation and to the use of the State Treasurer. The court ruled that the State was the real party in interest, and that it made but little difference, if any, who was made relator, and that since the point was not raised by demurrer it was waived. But the situation here is that a non-existent party is named as the prosecutor of the cause at the relation and to the use of the real party in interest. Able counsel cite no case and we find none that will support the contention that a non-existent party named as the obligee in the bond required by Section 1040, Revised Statutes 1919, or by any other act, may prosecute a suit on such bond for the use of any one for whom such bond is required to be given.

"We are not ruling that the Cement Company has no remedy. We are ruling that a non-existent party cannot prosecute this case. Reaching this conclusion it is not necessary to consider other assignments. The judgment should be reversed and the cause remanded with directions to dismiss without prejudice."

I. It will be noted that the respondents did not rule "that the Cement Company has no remedy," but merely "that a non-existent party cannot prosecute this cause." Their counsel on the other hand, who are also counsel for the Southern Surety Company, de-

vote their brief and argument almost exclusively to the proposition that the contract evidenced by the bond is a nullity, on the ground that the bond was executed to a non-existent party. The latter contention will be briefly considered because of its bearing on the question ruled by the Court of Appeals.

There can be no doubt but that the statutory Missouri State Highway Board became, for all purposes whatever, utterly extinct on March 4, 1921. All of the things referred to in the record under review happened long after March 4, 1921; the state agency just referred to, being out of existence, could not therefore have had any part or share in any of them. Only by unwarranted assumption, on the record before the Court of Appeals, could its phantom be brought out and made to play a part in the case now under review. Let it then be consigned to "the limbo of forgotten things." Turning to the record we find that beyond any question the Southern Surety Company did contract with *somebody*—not a mythical or imaginary entity. For by its answer it admits that it executed and delivered its bond to a group of individuals who called themselves, and whom in its bond it designated, "Missouri State Highway Board." This group did not assume the name of any state board or agency, they did not purport, so far as the record discloses, to be acting for or on behalf of the State. They must therefore have been acting for themselves as individuals in their own proper persons. Now, if a voluntary association of citizens wanted to contribute to the development of Missouri's rapidly expanding State Highway System by constructing five miles of state highway, such a donation would have been welcomed by the State. At least there was no law prohibiting them from doing so. Of course the construction would have had to conform to standards adopted by the State Highway Commission and been done under its general direction and supervision. But as the construction which lies at the root of this controversy was fully completed, it must be assumed that it was done with the consent and approval of the State Highway Commission. What these individuals could themselves do in the matter of state highway construction they could contract to have done. They could enter into such a contract under the name of the "Missouri State Highway Board," or the "Inscrutable Four," or any other name that tickled their fancy, provided they did not intend thereby to perpetrate a fraud. There can be no question about that. So the conclusion is inevitable that the contract entered into by the individuals styling themselves "Missouri State Highway Board," wherein they contracted for and on behalf of themselves for the construction of five miles of state highway, was not forbidden by law; nor was it immoral or against public policy, but in all respects valid.

If the voluntary "Missouri State Highway Board" could enter into a valid contract for the construction of a segment of state highway, it could of course take a valid bond for the faithful performance of the contract on the part of the contractor. And in such a bond the surety, independent of any statute, could validly obligate himself to laborers and materialmen for the payment, upon his principal's default, for all material and labor furnished under the contract. The question is no longer an open one in this State.

The petition alleged the execution of the bond, pleaded its provisions according to their legal intendment, assigned a breach of one of its covenants and then set forth with particularity the damages suffered by relator as a consequence thereof. It clearly stated a cause of action. It was, however, open to attack in one respect. Could the persons who had associated themselves together under the name, "Missouri State Highway Board," and who by that name were designated as the primary obligees in the bond collectively and in that name bring a suit on the bond? In other words, did "Missouri State Highway Board" have the legal capacity to sue? That question, however, was waived when the defendants filed a general demurrer to the petition. It was waived again, if that be possible, when they filed an answer going exclusively to the merits. This court has so ruled on analogous facts so often that it is unnecessary to cite the cases.

II. There is another aspect of the case which brings us to a more immediate consideration of the ruling of the Court of Appeals. That court did not hold that the bond sued on was a nullity; it merely held that "Missouri State Highway Board" could not prosecute the suit, on the ground that "Missouri State Highway Board" was non-existent at the time the action was commenced. Now the bond was of a dual nature; the principal and surety therein obligated themselves: first, to "Missouri State Highway Board" touching certain matters; and, second, to laborers and materialmen with respect to wholly different matters. The two obligations were entirely separable and independent of each other. [Kansas City ex rel. v. Surety Co., 196 Mo. 281, 93 S. W. 405.] The one alleged to have been broken in the case under review was the one to laborers and materialmen. Upon the breach alleged a cause of action accrued in favor of the Cement Company; the Cement Company brought the suit *in the name* of "Missouri State Highway Board;" it could have instituted it in its own name. [St. Louis v. Von Phul, 133 Mo. 561, 34 S. W. 843, and cases there cited.] But even though it did not bring the suit in its own name, it was the real plaintiff in fact and was so regarded and treated in the conduct and trial of the cause

in the circuit court. Note the following from the answer of the defendant Surety Company:

"Defendant further answering said petition states that, if the Carterville Construction Company, defendant herein, was indebted to *plaintiff* herein, on account of cement or other materials or supplies purchased from *plaintiff* by said Construction Company, said Carterville Construction Company, on December 18, 1923, without the knowledge or consent of this defendant executed and delivered to *plaintiff* its certain promissory note payable to *plaintiff Cement Company* for the sum of $4060.60, payable sixty days after date thereof, in payment of said account or that portion thereof, and that upon the maturity of said note the *plaintiff Cement Company* extended the time of payment thereof for sixty days, all without the knowledge or consent of this defendant.

"Defendant further states that defendant, Carterville Construction Company, without the knowledge or consent of this defendant, executed and delivered to *plaintiff Cement Company* in payment of the balance claimed to be due from said Construction Company on account of cement claimed to have been sold and delivered by *plaintiff Cement Company* to said Construction Company, its certain promissory note for the sum of $789.25, payable sixty days after date to the order of *plaintiff*, and that upon maturity of said note the time of payment was extended by *plaintiff Cement Company* for a period of sixty days.

"That *plaintiff*, by its acceptance of said notes, extended the time of payment of its said account against defendant Construction Company, thereby releasing this defendant from all liability on said bond herein sued on." (Italics ours.)

A painstaking examination of the record discloses that the whole force of the trial in the circuit court spent itself upon the determination of the issues of law and fact tendered by the portion of the answer just quoted. No question was ever raised as to the existence or non-existence of "Missouri State Highway Board." The mere fact that the Cement Company, the real party in interest, brought the suit in the name of "Missouri State Highway Board" to its (the company's) use neither misled any party to the action nor in anywise affected the merits of the controversy. In view of that situation of the Court of Appeals, after it became convinced that "Missouri State Highway Board" was non-existent at the time of bringing the suit, should have ordered the words, "Missouri State Highway Board for the use and benefit of the," stricken out of the caption of the petition and then affirmed the judgment of the circuit court, if the proceeding was otherwise free from error. [Mechanics' Bank to use of Davis v. Gilpin, 105 Mo. 23, 16 S. W. 524; Mueller v. Kaessmann, 84 Mo. 318; Cruchon v. Brown, 57 Mo. 38; Weil v.

Simmons, 66 Mo. 617.] Its decision that the cause should be dismissed contravenes principles announced in the cases cited and many others.

If we were permitted to enter the field of conjecture, we should hazard the guess that the party who really let the road construction contract and took the surety bond referred to in the record was none other than the Missouri State Highway Commission; that some clerk or draftsman in preparing the bond used one of the blank forms of the then recently defunct Missouri State Highway Board; and that by inadvertence he failed to strike out the word "Board" and insert in its stead "Commission." But be that as it may, it is certain that the mistake never occurred to any one connected with the suit on the bond until the cause reached the Courts of Appeals. Had it been raised in the circuit court it could have been fully met by formal averments in an amended petition and the trial on the merits then proceeded with in all respects like the one had. With all due respect to our learned brethren of the Court of Appeals, it seems to us that they disposed of the case on a mere superficial technicality, in contravention of the entire spirit of our code as we have declared it in many cases.

Their judgment and opinion are quashed. All concur.