C. B. CLARK and W. H. STEED, Appellants, v. GRAND LODGE OF THE
BROTHERHOOD OF RAILROAD TRAINMEN.—43 S. W. (2d) 404.

Court en Banc, November 17, 1931.

*R. T. Brownrigg* and *Mason, Goodman & Flynn* for appellants.

1087

*W. S. Campbell* and *Rassieur, Long & Yawitz* for respondent.

1088

STURGIS, C.—The plaintiffs brought this suit in the Circuit Court of the City of St. Louis. The case comes to this court on plaintiffs' appeal from the judgment of that court sustaining defendant's demurrer to plaintiffs' petition and adjudging that plaintiffs take nothing by their suit. The demurrer is in the usual and standard form, reciting that defendant "comes" into court and demurs to plaintiffs' petition and each count thereof for the reasons therein stated. The questions raised by the demurrer are the only ones to be considered by this court.

We make this preliminary statement for the reason that the record shows that at the return term of court the defendant appeared specially and for the purpose of the motion only and filed its motion to quash the sheriff's return showing service on the defendant. That motion was overruled and defendant excepted to the court's action and filed its term and final (joint) bill of exceptions, but the defendant is not an appellant here and complains of nothing. At the next term of the trial court the defendant filed its demurrer and in that does not attempt to limit its appearance specially or for the purpose of the demurrer only, if indeed that could be done. By its demurrer the defendant entered its general appearance and submitted itself to the jurisdiction of the court. The question of proper service passed out of the case. Nor was it necessary for plaintiffs to file, as they did, their motion to have the court set aside its order sustaining defendant's demurrer to the petition and then save their exceptions thereto by a bill of exceptions. A demurrer saves itself for review on appeal and needs no preservative method or process. In effect, the

1090

defendant walked into court, waived every other question and chose to try the case by its demurrer challenging the sufficiency of the petition. The only error that is assigned on this appeal and to be considered is that the trial court erred in sustaining the demurrer to the petition.

The demurrer challenges the sufficiency of plaintiffs' petition on four separate grounds, but the defendant in its statement and brief in this court has abandoned two such grounds and, with commendable fairness, says: "We have decided to present this case on the clear-cut issue made under the first and third points of the defendant's demurrer." These grounds we will therefore proceed to consider.

The first ground of defendant's demurrer is "that the court has no jurisdiction of the person of the defendant, it appearing on the face of said petition and on each and every one of said several counts thereof that the defendant is a voluntary association and as such is incapable of being sued at law." The demurrer then states that if plaintiffs claim that defendant can be sued as "a voluntary association" under and by virtue of Section 1186, Revised Statutes 1919 (Sec. 728, R. S. 1929), said statute is unconstitutional and void in that respect and to that extent. The other ground of the demurrer which defendant yet contends is valid is that neither the first nor any other count of the petition, or the petition taken in its entirety, sets forth facts sufficient to constitute a cause of action against the defendant. It is apparent, therefore, that the "clear-cut issue" on which defendant rests its demurrer is that the defendant, Grand Lodge of the Brotherhood of Railroad Trainmen, being, as stated in the petition, a voluntary unincorporated association, is not capable of being sued at law, or, as defendant asserts, is not a suable entity.

Notwithstanding the matters just stated, the defendant seeks to inject into the case some questions of jurisdiction both as to the cause of action sued on in that same accrued in another state and as to the person of defendant, it being a non-resident of the State with no business office or agent in this State. Obviously, these matters cannot be considered on this demurrer as defendant, by demurring, entered its general appearance and can raise such questions only as to which the truth appears on the face of the petition. It does not appear on the face of the petition that the cause of action sued on did not occur in this State, nor that defendant is a non-resident of this State, not domiciled here and not doing business here. These are questions that should be raised by motion to quash the service of summons or by answer and not by demurrer.

We can also at this time dispose of defendant's suggestion in its demurrer that if plaintiff relies on the provisions of Section 1186,

Revised Statutes 1919 (Sec. 728, R. S. 1929, Sub-div. 7), as making, by legislative decree, voluntary associations suable in this State in the name it has elected to use, the same is unconstitutional, because such purpose is not expressed in the title of the act. This question was disposed of by this court in Mayes v. United Garment Workers, 320 Mo. 10, 18. This court there held that the original Section 1186, Revised Statutes 1919, covered and dealt solely with the manner of serving process and that to be valid, the amendment of 1915, constituting Sub-division 7 of said amended section, should be construed as dealing with the same subject and nothing else. The court, therefore, held said act void in so far as it could be held to have made voluntary associations suable entities, but that so far as it provided for a means and manner of bringing unincorporated voluntary societies into court by service of summons, the same was valid and binding. In other words, Section 1186, Revised Statutes 1919, as amended by the Act of 1915, is a valid service statute, but is invalid as creating suable entities. This statute, therefore, has no effect on the question of whether a voluntary unincorporated association is or is not a suable entity in this State. It leaves that question just as it would be had Section 1186, Revised Statutes 1919, not been amended by the Act of 1915.

The defendant is in court if it is an entity capable of being sued at law, and we will consider that question. It is also true that the question of defendant not having legal capacity *to be sued* is not a ground of demurrer mentioned in the statute, Section 770, Revised Statutes 1929, relating to demurrers. That the plaintiff has not legal capacity to sue is one of the seven statutory grounds for demurrer prescribed by said Section 770, but that defendant has not the legal capacity *to be sued* is not such a statutory ground. That defendant has not the legal capacity to be sued is ordinarily a matter of defense. In any event, the petition need not show or state facts showing defendant's capacity to be sued. The petition is concerned only with plaintiff's cause of action, and a failure to show plaintiff's legal capacity to sue might, in effect, render the petition demurrable on the ground that a want of capacity to sue thereby appears on the ·face of the petition. However, a mere *failure* of the petition to show or state facts showing that defendant has legal capacity *to be sued* cannot be reached by demurrer but must be dealt with by the answer. It is only when the petition affirmatively states facts showing that defendant has not the legal capacity to be sued that this defect can be reached by demurrer. The same is true of the other ground of demurrer relied on, to-wit, that the court has no jurisdiction of the defendant. As applied to this case, this does not mean that the particular court in which the suit is brought has no jurisdiction of the

defendant, but that as defendant is not a suable entity, no court has jurisdiction to entertain a suit at law against such defendant. While not free from doubt as to a demurrer being sufficient to raise the point here presented, we will treat the demurrer as sufficient to raise the question whether, inasmuch as the affirmative facts stated in the petition and appearing on its face show that defendant is a voluntary unincorporated association, it is a legal non-entity not capable of being sued.

The petition herein, the allegations of fact therein being taken as true on this demurrer, discloses that each of the numerous counts of the petition is based on a policy or certificate of life insurance issued and executed by the defendant, insuring the life of a person therein named, and payable in the amount specified to a named beneficiary on proof of the death of the person insured if then in good standing. The certificate of insurance refers to and makes a part thereof the constitution and by-laws of the defendant order. To be in good standing, the insured was required to make payment of monthly dues in a specified amount. These monthly dues constituted the fund enabling defendant to meet its obligations. Each policy was issued on the application of the insured, stating his age and occupation, the condition of his health, and other facts usual in applications for insurance. The certificate was executed in the name and on behalf of the defendant and signed by its chief officers and attested by an officer of the local lodge of which the insured was a member. These policies of insurance are in all material respects of the form and substance in common use by fraternal insurance societies and need not be set out at length. To those who desire to know more fully the form and conditions of these insurance policies and defendant's activities as a labor and insurance organization, we refer to Brotherhood of Railroad Trainmen v. Adams, 222 Mo. App. 689, 5 S. W. (2d) 96; Reid v. Brotherhood of Railroad Trainmen, 232 S. W. 185; Murphy v. Brotherhood of Railroad Trainmen, 199 S. W. 730; Shadley v. Grand Lodge of Brotherhood of Railroad Trainmen, 212 Mo. App. 653, 254 S. W. 363, and O'Neal v. Grand Lodge of Brotherhood of Railroad Trainmen, 216 Mo. App. 212, 261 S. W. 128. In the O'Neal case, supra, the court, at defendant's request, made a finding of facts, corresponding to what is shown by the record in the present case, and from which we may quote as applicable here, to-wit:

"That the Brotherhood of Railroad Trainmen is . . . a labor organization, consisting of one grand lodge and a large number of subordinate lodges.

"That the membership of said grand lodge and subordinate lodges is confined to persons of one hazardous occupation, to-wit, railroad

trainmen engaged in the hazardous occupation of managing and operating railroad trains.

"That said grand lodge and subordinate lodges are unincorporated, are without capital stock, and are organized and carried on not for profit, but solely for the mutual benefit of the beneficiaries of such members as may belong to the beneficiary class and as may hold beneficiary certificates issued by the grand lodge.

"That said brotherhood has a lodge system and ritualistic form of work and representative government.

"That the Grand Lodge is the supreme legislative and governing body, and that the brotherhood has adopted a constitution governing said grand lodge and governing all the members of the organization, and has adopted certain general rules which have to do with the relations between its members *inter sese* and between them and their employers, . . . and that said constitutions and general rules and the beneficiary certificate, when issued, constitute the contract between the beneficiary member and the organization."

The petition in this case alleges, and we take as being true, these facts also:

"That the defendant, Grand Lodge of the Brotherhood of Railroad Trainmen, is now, and was at all the times mentioned, a voluntary association engaged in the business of insuring the lives of its members in the State of Missouri and elsewhere; that it is an unincorporated labor organization with general headquarters in the State of Ohio; that such Grand Lodge is the governing body of the Brotherhood of Railroad Trainmen, an organization composed of more than one hundred thousand members residing in different states of the United States and Canada; that it does an insurance business in the State of Missouri and elsewhere by writing policies of insurance on its members and enters into such contracts under the name of the Grand Lodge of the Brotherhood of Railroad Trainmen, which is the name by which it is known and which it uses in the transaction of its insurance business; that it exercises and enjoys, both in this State and in other states of the Union, the power of entering into insurance contracts as an entity; that heretofore by its beneficial certificates or policies of insurance the said defendant insured the life of the persons hereinafter named as the assured and in consideration of monthly payments to be paid on or before the first day of each month, as therein specified, agreed, upon the death of the assured, if said assured should then be in good standing in defendant association, to pay to the person named as the beneficiary in said policy of insurance the sum hereinafter specified; that the said persons named as assured in the various policies continued to pay each month the said monthly payments from the date of said insurance until the date of the repudiation of said contract of insurance by

the defendant as herein set forth; that at said time such insured person, then being in good standing in defendant association, tendered the said defendant the amount of his monthly payments then due, and said defendant refused to accept the said monthly payments and then and there repudiated all the obligations and liabilities under said certificate or policy of insurance and has refused and still refuses to return to said assured or to plaintiffs the amount of said payments or any part thereof; that at the time of said tender the said assured persons had fully complied with all the conditions of said contract and said refusal was arbitrary, unjustifiable and unlawful.''

The petition further shows that the two named plaintiffs bring and prosecute this suit as trustees of an express trust by authority of written assignments made by the various assured persons and their beneficiaries named in the various insurance policies involved in this action. Plaintiffs' legal capacity to bring and maintain this suit is not here questioned.

Both parties call our attention to the fact that while this case was pending in the trial court and after the trial court had overruled defendant's motion to quash the sheriff's return on the summons issued and served on the defendant, an original proceeding in prohibition was brought in this court to restrain and prohibit the trial judge from taking further cognizance of this case and from proceeding further therein. That suit was brought and prosecuted in the name of the State of Missouri at the Relation of W. G. Lee and four others ''as the Executive Officers, Trustees and Custodians of the funds of a voluntary, unincorporated, fraternal Association known as the Brotherhood of Railroad Trainmen.'' Taking notice of our own records in that proceeding, which in fact constitute a part of the proceeding had in the present case, we find that it is alleged in the application for the writ of prohibition that the petitioners are the executive officers of a voluntary, unincorporated fraternal association known as the Brotherhood of Railroad Trainmen, with its principal office at Cleveland, Ohio; that W. G. Lee is president, A. E. King is secretary and treasurer, and the other three named petitioners constitute the board of trustees of said association; that approximately five thousand members of said association are residents and citizens of Missouri; that said voluntary, unincorporated fraternal association was organized and is carried on for the purpose of uniting railroad yardmen and trainmen into a brotherhood for the purpose of advancing the interests of the members, bettering the conditions of their employment, and obtaining the advantages of collective bargaining, whereby not only the said conditions of employment may be made better, but also that wages may be adjusted by mutual conferences and negotiations; that inasmuch as the members are engaged in a

hazardous occupation whereby they are uninsurable and unable to secure protection in the way of life insurance in regular life insurance companies, the said brotherhood, as one of its incidental objects, has provided a beneficiary department whereby the members may obtain a benefit to be paid their families in case of death, or to themselves in the event of disability, by means of small monthly contributions known as assessments; that said association, being primarily a trade union, and the said beneficiary department being maintained as an incidental object, is exempted from the insurance laws of the State of Missouri relative to fraternal beneficiary associations, its members being employed in a single hazardous occupation; that said order has a membership of more than one hundred and seventy thousand and those members constitute more than eighty-five per cent of all the yardmen and trainmen engaged upon the railroads of the United States.

The said application for prohibition then recites the pendency of this action in the Circuit Court of City of St. Louis, the service of summons in that case in St. Louis on John Bannon, first vice-president of defendant, Grand Lodge of the Brotherhood of Railroad Trainmen, the motion to quash the sheriff's return and the court's overruling same, and further alleges: "Notwithstanding the fact that said Brotherhood of Railroad Trainmen is a voluntary, unincorporated association and has no legal existence whereby it can be sued by name in an action at law as an entity unless such right is conferred by the statute of this State mentioned in said motion to quash, which statute petitioners allege is unconstitutional and void, the said judge of the trial court heretofore on February 2, 1926, overruled said motion; that no lawful authority exists whereby this voluntary, unincorporated association, or any voluntary, unincorporated association, can be sued at law by name as an entity."

The court refused to issue a preliminary writ of prohibition and dismissed the proceeding therefor without any written opinion or statement of its reasons. It is apparent, however, that the same question, on much the same facts, was pressed on this court as the ground for issuing a writ of prohibition as is now presented by this demurrer, to-wit, that defendant, because of being an unincorporated, voluntary association, has not legal capacity to be sued in this State and is in fact not a suable entity. The plaintiffs now take the position that this court in denying the writ of prohibition necessarily decided this question in the negative and that such ruling is *res adjudicata.* There are so many grounds upon which this court may have denied the writ of prohibition that we cannot hold such action as being decisive of this case, but the action then taken will be given some consideration here.

It is apparent that defendant is primarily a labor organization having to do largely with questions of employment, collective bar-

gaining, hours of labor, working conditions, etc., but its activities and liabilities in this respect are in no way here involved. But the defendant has also established and conducts an insurance branch of its business for the benefit of and limited to the members of the order. That defendant is doing a large insurance business in this and other states is unquestioned. It collects and disburses large sums of money in connection with its insurance business. It is doubtless true that thousands of railroad trainmen carry no other insurance than certificates or policies issued by this association. The certificates of insurance issued are essentially insurance contracts. Thereby the defendant, in consideration of the payment of a premium in the form of monthly dues, undertakes and agrees to pay the person named as beneficiary a certain sum of money on death or disability of the insured.

Dealing with defendant as an insurance association, which stands admitted, we are not impressed with the argument that our laws are so deficient that large associations like this one can and do carry on their business in this State, making contracts of insurance, collecting thousands of dollars by way of premiums and dues, and when brought into court to answer for violations of or refusal to perform such contracts, they can defy the court to afford any remedy by asserting their legal non-entity and want of capacity to be sued. The laws of this State take cognizance of the fact that life, accident and disability insurance is not carried on solely by individuals or corporations. Beneficiary associations not incorporated are of ancient origin and have long carried on the business of insuring their members. The term "association," as commonly used, applies to "a body of persons acting together, without a charter, but upon the methods and forms used by incorporated bodies, for the prosecution of some common enterprise." [5 C. J. 1333, and cases there cited.] Perhaps the most common enterprise which associations foster and carry on is that of mutual protection and relief in misfortune. This naturally takes the form of insurance. It is said in Rubey v. Shain, 54 Mo. 207, 209, in construing a constitutional provision, that "the word association might well apply to an unincorporated company." In fact, a corporation is merely an incorporated association, that is, an association which, by complying with certain conditions prescribed by law, is clothed with corporate authority. The business carried on by the corporation and the form of the organization may be little, if any, changed by the fact of incorporation from that of the association.

It is apparent that our statutes regulating and governing the business of life and disability insurance takes cognizance that such business has been and may continue to be carried on by voluntary associations as well as by corporations or indi-

viduals. Thus we have in Chapter 37, Revised Statutes 1929, relating to insurance generally, an Article 13 dealing with fraternal associations and regulating such associations in the transaction of insurance business. Section 5990 of such Article provides: "Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provision for the payment of benefits in accordance with section 5994, is hereby declared to be a fraternal benefit society." It should be noted that said section does not, nor does any other statute, make such associations corporations or require them to become such as a condition precedent to doing business in this State. Such associations may incorporate, but are not required to do so. [Sec. 6002, R. S. 1929.]

We think it is apparent that defendant association, though not incorporated, is a fraternal benefit association within the meaning of said statute. It is organized and carried on solely for the mutual benefit of its members and their beneficiaries, without capital stock, having a lodge system with ritualistic form of work and representative form of government. If all these essential facts do not appear on the face of the present petition, such petition at least does not affirmatively show that they do not exist. This, as we have said, is all that is required on a demurrer raising the question of a defendant not having capacity to be sued.

Section 5997 of said Article 13 provides: "Every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter or articles of incorporation, or, if a *voluntary association*, the articles of association, the constitution and laws of the society, and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member." Said section also provides that the articles of association, constitution and by-laws of a voluntary association enacted subsequent to the issuance of the benefit certificate shall be binding on the member and his beneficiary.

Section 6021, Revised Statutes 1929, also a part of said Article 13, governing and imposing certain requirements on fraternal benefit societies, provides that "nothing contained in this article shall be construed to affect or apply to . . . societies which limit their membership to any one hazardous occupation," and further that "no society, which is exempt by the provisions of this section from the requirements of this article (fraternal insurance) shall give or allow or promise to give or allow any person any compensation for pro-

curing new members." The defendant association clearly comes within the exemption provisions of this statute.

Note should also be taken of Section 4526, Revised Statutes 1929, which provides that "the term 'corporation,' as used in this chapter, shall be construed to include all joint stock companies or associations having any powers or privileges not possessed by individuals or partnerships." It is alleged in the present petition that this defendant has powers and privileges not possessed by individuals or partnerships, but that is a conclusion of law to be drawn by the court rather than a statement of fact admitted by the demurrer. [Mayes v. United Garment Workers, 320 Mo. 10, 6 S. W. (2d) 333; Newton County Farmers' & Fruit Growers' Exchange v. Kansas City So. Railroad Co., 326 Mo. 617, 31 S. W. (2d) 803.]

Evidently the statutes above mentioned, and there may be others, authorize voluntary unincorporated associations, such as defendant, to carry on its business of insurance in this State and to make insurance contracts such as here involved. Contracts are not contracts unless they are enforceable. To say that an association like defendant can make contracts necessarily means valid contracts—contracts that are binding on the parties and enforceable against them. It is an absurdity to say that defendant can make contracts of insurance, but cannot be sued thereon. If defendant has legal capacity to make a contract of insurance, it has legal capacity to be sued thereon. If it is a legal entity when making such contracts, it retains such legal entity when sued thereon.

In State ex rel. v. Cox, 318 Mo. 387, 1 S. W. (2d) 787, speaking of a contract made in the name of "Missouri State Highway Board," which was a mere name adopted by certain parties for that purpose, this court said: "They could enter into such a contract under the name of the 'Missouri State Highway Board,' or the 'Inscrutable Four,' or any other name that tickled their fancy, provided they did not intend thereby to perpetrate a fraud. There can be no question about that. So the conclusion is inevitable that the contract entered into by the individuals styling themselves 'Missouri State Highway Board,' wherein they contracted for and on behalf of themselves for the construction of five miles of state highway, was not forbidden by law; nor was it immoral or against public policy, but in all respects valid."

Of course, we are not unmindful of the rule invoked by defendant that an unincorporated association has no legal entity distinct from its members and cannot at common law maintain an action in its own name or be sued in such name. [5 C. J. 1365, 1369; 13 Cyc. 99; 19 R. C. L. 1317; Newton County Farmers' & Fruit Growers' Exchange v. Kansas City So. Railroad Co., 326 Mo. 617, 31 S. W. (2d) 803, and the numerous cases there cited.] As defendant states

in its brief, "the Grand Lodge of the Brotherhood of Railroad Train-men is a voluntary association and is not a suable entity in the name adopted by the members thereof unless there is some provision of the statutes making the members suable in the name adopted by them." If we grant this to be a correct statement of the law, yet we are constrained to hold that the provisions of our statutes above noted, are sufficient to make such an association, at least as to its insurance contracts, a suable entity in the name adopted by it and used in making such contracts. The previous rulings of this court justify such holding.

Thus Syz et al. v. Milk Wagon Drivers' Union, 24 S. W. (2d) 1080, was a suit against an unincorporated, voluntary association issuing insurance contracts. The court there said: "It is also urged as a ground for reversal of the judgment that the defendant, being a voluntary or unincorporated association, is not a suable entity. The point must be ruled against defendant. It is true that section 1186, Revised Statutes 1919, has been held unconstitutional, in so far as it constitutes voluntary or unincorporated associations suable entities. But the defendant union, being a voluntary association having powers and privileges not possessed by individuals or part-nerships, is a suable entity without the aid of said statute. [Mayes v. United Garment Workers of America (Mo. Sup.), 6 S. W. (2d) 333; Wiethuechter v. Miller, 276 Mo. 322; Williams v. United States Express Co., 195 Mo. App. 362.]"

Mayes v. United Garment Workers of America, 320 Mo. 10, 6 S. W. (2d) 333, was a suit against an unincorporated, voluntary association. That suit was not, however, on an insurance contract. The court there held that the amendment of 1915 to Section 1186, Revised Statutes 1919, in so far as it attempted to or did create voluntary associations suable entities, is unconstitutional because of a defect in the title to the act. The court, however, then said: "As a matter of fact many trade unions are incorporated and such, of course, can sue and be sued. Some unincorporated trade unions provide for the payment of benefits upon the death or physical dis-ability of their members in accordance with the provisions of the statute dealing with fraternal beneficiary associations, and adequate provisions are made by law for the service of process upon them. Others may be voluntary associations having or not having powers or privileges not possessed by individuals or partnerships. . . . We are not bound to declare the whole act unconstitutional merely because a part of it is unconstitutional. While the new matter in the amendment of 1915 conflicts with Section 28, Article IV, of the Constitution insofar as it undertakes to constitute voluntary or un-incorporated associations and organizations suable entities, it does not so offend to the extent that it prescribes the manner of serving

process upon such associations and organizations, if any there be, as are otherwise properly constituted suable entities.''

In Bruns v. Milk Wagon Drivers' Union, 242 S. W. 419, which was a case against a voluntary association, the court said: ''Defendant also makes the point, it appears for the first time in this court, that the defendant, being a voluntary unincorporated labor union, was not capable of suing or being sued under the laws of this State. But our statute, section 1186, Revised Statutes 1919, provides how writs may be served upon voluntary or unincorporated associations, and such an organization as this is a legal entity, and entitled to sue and be sued the same as corporations. [Wiehteuchter v. Miller, 276 Mo. 322; Williams v. United States Express Co., 195 Mo. App. 362.]''

McIntyre v. Live Stock Shipping Association, 222 Mo. App. 936, 11 S. W. (2d) 77, was a suit to recover on a check given by defendant, a voluntary live stock shipping association. The check was given for the purchase of stock which the defendant shipped and sold and received the proceeds. The defendant in its answer alleged that the ''said Live Stock Shipping Association was a voluntary association, organized for the purpose of shipping livestock to market for themselves and other persons; that it was organized purely for the purpose of convenience and accommodation and received no profit from its transactions and made no charge for services other than such as were sufficient to cover expenses of loading and shipping.'' The suit was against the association in the name in which it transacted business. The court said: ''The first point urged on appeal is that all members of the voluntary association must be made parties defendant,'' citing a number of cases supporting the same. ''In our opinion the cases of Bruns v. Drivers' Union, etc., 242 S. W. 419; Williams v. Express Co., 195 Mo. App. 362, 191 S. W. 1087, and O'Neal v. Brotherhood of Railroad Trainmen, 261 S. W. 128, control the present case, and we accordingly rule against defendants on the point urged.''

The case of Shadley v. Grand Lodge of the Brotherhood of Railroad Trainmen, 212 Mo. App. 653, 254 S. W. 363, is against this same defendant and the cause of action is much like that here involved. The court there said that defendant's answer admits that it is a voluntary association and engaged in insuring the lives of its members, and that it issued the beneficiary certificate referred to in the petition. It is also stated that the preamble of defendant's constitution designates the purpose of the defendant brotherhood as an unincorporated association and limits the membership to railroad trainmen, a class of persons engaged in a hazardous calling. The court then said: ''The defendant organization is, as it appears, first, a trade union or labor organization, and with that feature

we are not here concerned, but as such it issues to its members contracts known as certificates for benefits to be paid to a beneficiary in case of death of the insured member. The organization insures the lives of its members for a specific sum to be paid as a monthly assessment. The contract between the plaintiff and the defendant, if a contract at all, is one for insurance. It is an obligation to pay the beneficiary of the certificate a certain sum of money in the event of the death of the insured. We hold that if this contract is reasonably open to two constructions, the one most favorable to the insured must be adopted, whatever the classification of the defendant may be in the calendar of fraternal organizations.'' The court ruled that defendant's answer did not state facts sufficient in law to constitute a defense to the plaintiff's cause of action, and that plaintiff can recover.

The case of Murphy v. Brotherhood of Railroad Trainmen, 199 S. W. 730, was a suit against this same defendant on one of its contracts for insurance. The defendant set up a number of defenses which are only allowable to fraternal beneficiary associations. The court held that because defendant had not complied with certain statutory provisions relative to fraternal beneficiary associations, its contract must be held to be one of general or old-line insurance. The court said: ''Notwithstanding defendant's claim that it is a fraternal benefit association, the contract herein must be regarded as an ordinary life insurance contract, and is to be treated as being subject to all the laws governing life insurance companies. . . . Whether an organization is a fraternal benefit society within the definition of our statute, . . . depends upon the existence of a number of facts relating to its organization, method and purpose of doing business specified in the statutory definition, and in order for such matter to be put in issue, the defendant should have pleaded and proved those facts.''

There are a number of cases holding that whether a voluntary, unincorporated association is or is not entitled to the special privileges accorded to fraternal benefit societies depends on a number of facts, but if it is not, its contracts are nevertheless valid as old-line or general insurance. [O'Neal v. Grand Lodge of the Brotherhood of Railroad Trainmen, 216 Mo. App. 212; Reid v. Brotherhood of Railroad Trainmen, 232 S. W. 185.]

In Reid v. Brotherhood of Railroad Trainmen, 232 S. W. 185, this same defendant was sued on one of its policies of insurance. The court said: ''Defendant, in its answer duly sworn to, denied that it was a corporation and alleged that it was a voluntary unincorporated association organized under and by virtue of the laws of Ohio, and that it is, so far as its insurance business is concerned, a fraternal benefit society, and that its membership is limited to the one hazardous occupation of railway trainmen, and that benefit certificates are

1102

issued only to members.'' The court ruled that because defendant had not complied with our statutes in reference to fraternal beneficiary associations, its policy of insurance must be regarded as one of general insurance and subject to our statutes governing misrepresentations, etc.

In State ex rel. Home Savings Institution v. Lee, 288 Mo. 679, this court held that a voluntary association in the nature of a building and loan association, though not incorporated, was entitled to a certificate authorizing it to do business in this State when it complied with certain statutory regulations in that respect. The court said: ''It is obvious that the article of the Constitution and statute referred to do not by legislative fiat convert joint-stock companies or voluntary associations into corporations or *require their incorporation before doing business.* At common law voluntary unincorporated associations could not sue or be sued. . . . By an amendment to Section 1760, Revised Statutes 1909; suits may be brought against any such association 'in the name it has selected.' [Sec. 1186, R. S. 1919.] Respondent will not contend that this amendment required such societies to be incorporated or made them corporations.'' The court then held that the relator was entitled to a certificate authorizing it to do business in this State as an unincorporated association.

In Wiehtuechter v. Miller, 276 Mo. 322, this court considered this question and said. ''The petition alleges: That plaintiffs are members of the American International Musicians' Union, Local No. 2; that said local union is a voluntary benevolent association or trades-union; that the members of said union are too numerous to be joined as parties plaintiff herein. . . . There is some discussion in the briefs as to whether such an association could maintain a suit in its own name. While there have been some decisions in this State to the effect that an unincorporated association could not bring suit in its own name, under the present statute it is probable that such a suit might be maintained. Unincorporated joint-stock companies have been recognized as entities entitled to sue and be sued in this State, within and governed by statutes relating to corporations. [Williams v. U. S. Express Co., 195 Mo. App. 362; State ex rel. v. Railroads, 196 Mo. 523, 536, 537.] Voluntary associations, like the one here considered, are by the statutes classed with joint-stock companies. Section 2963, Revised Statutes 1909, is as follows: 'The term ''corporation'' as *used in this chapter,* shall be construed to include all joint-stock companies *or* associations having any powers or privileges not possessed by individuals or partnerships.' Section 2990 of that chapter provides that every corporation shall have power 'to sue and be sued.' The language of Section 2963 in extending the privileges and obligations of corporations to other organizations

describes those other organizations included within the provisions of the chapter, as 'those having any powers or privileges not possessed by individuals or partnerships.' . . . Section 7109, Revised Statutes 1909, in defining a benefit association, declares it to be a 'corporation, society *or voluntary association,* formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit,' and sets out certain privileges which such association may enjoy and powers it may possess. The Legislature evidently understood that *such associations could be sued,* for by the Act of 1915 they provided a method for service of process upon them the same as upon corporations. [Laws 1915, p. 225.] The allegation of the petition is that the local union on behalf of which this suit is brought is a 'voluntary benevolent association or trades-union' . . . and that the parent organization is duly incorporated, although the local union on behalf of which the suit is brought is not. Now, if the local union has authority to sue and be sued in its own name then the suit is not prosecuted in the name of the real party in interest, as provided in Section 1729, Revised Statutes 1909.''

In O'Neal v. Grand Lodge of the Brotherhood of Railroad Trainmen, 216 Mo. App. 212, the court held this defendant liable on a policy of insurance similar to that involved in this case. The court held that because the defendant had not complied with the statutes relative to fraternal beneficiary associations, its policy of insurance would be governed by the general laws relative to insurance contracts, that is, old-line insurance. The court there also held that the individual members of the defendant order or those acting as officers of subordinate lodges are not individually liable on such policy contracts.

In Williams v. U. S. Express Co., 195 Mo. App. 362, the suit was against a joint stock company. The court quoted the statute heretofore mentioned defining the term ''corporation'' to include joint stock companies or *associations* having any powers or privileges not possessed by individuals and partnerships; also the section providing that all corporations should have power to sue and be sued, which, by reason of this statute, applies to joint stock companies. The court then held, in view of these statutes, that ''we cannot but arrive at the conclusion that the defendant, being a joint stock company and, therefore, having powers and privileges not possessed by individuals and partnerships, must be treated as a corporation for the purpose of said chapters 33 and 21 [R. S. 1909] and, as such, can 'sue and be sued, complain and defend in any court of law or equity' as a legal entity.'' The court then overruled Adams Express Co. v. Street Railroad, 126 Mo. App. 471, and Metropolitan Street Railway Co. v. Adams Express Co., 145 Mo. App. 371.

In Brotherhood of Railroad Trainmen v. Adams, 222 Mo. App.

1104

689, 5 S. W. (2d) 96, this defendant itself invoked the protection of the courts of this State in an interplea case and asserted its right to bring suit against rival claimants to the proceeds of one of its benefit certificates.

We need not in this case go as far as did the Supreme Court of the United States in United Mine Workers of America v. Coronado Coal Co., 259 U. S. 345, 66 L. Ed. 975, in holding that unincorporated associations, such as is defendant, are suable entities in actions sounding in tort as well as in contract. In so holding that court followed the ruling of the highest court in England in the case of Taff Vale Ry. Co. v. Amalgamated Soc. Ry. Servants, A. C. 426, 1 Br. R. C. 832. The United States Supreme Court there based the right to sue such an association as such on "the very necessities of the existing conditions and the utter impossibility of doing justice otherwise" and pointed out that "to remand persons injured to a suit against each of the four hundred thousand members to recover damages" would be a denial of all remedy. All that we need hold in the present case is that when such an unincorporated association engages in this State and elsewhere in the business of insuring its members, to whom it issues insurance contracts and from whom it collects premiums, then such associations may be sued in the courts of this State, in the name in which they contract and do business, on causes of action growing out of and based on such contracts.

We think also that the doctrine of estoppel might well be applied to a case like this. This association, having over one hundred thousand members with regularly constituted officers and a perfect working organization, has the appearance, form and method of doing business of a corporation or legal entity. It has chosen a name and does business as a legal entity under and by use of that name. It holds itself out as capable of contracting in that name and by that name does enter into insurance contracts and in that name collects the premiums and accumulates funds to meet such contract obligations. When sued on such contracts in the name which it has used in making same, it ought not to be allowed to say that it is a mere myth—an intangible non-entity incapable of being sued. In West Missouri Land Co. v. Railway Co., 161 Mo. 595, 604, it is held that a person dealing with and contracting with a company as a corporation will be estopped from denying that such company is a corporation. This is familiar law and many cases supporting same could be cited; and it should also be true that an association contracting with individuals as a legal entity will be estopped from denying that it is in fact a legal entity. In 5 Corpus Juris, page 1336, this is said: "One who deals with an association as a legal entity capable of transacting business, and in consequence receives from it

money or other things of value, is estopped from denying the legality of its existence. [Petty v. Brunswick, etc., Railroad Co., 109 Ga. 666, 35 S. E. 82.]"

The result is that this case should be reversed and remanded for further proceedings in accordance with the views herein expressed. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion of STURGIS, C., in Division One, is hereby adopted as the opinion of Court en Banc. All of the judges concur.