[No. 27276.   Department Two.   December 30, 1938.]

FLORENCIO L. LABONITE, *Respondent*, v. CANNERY
WORKERS' AND FARM LABORERS' UNION, LOCAL
UNION No. 18257, *et al., Appellants*.[1]

*Houghton, Cluck & Coughlin* and *Ross N. Kingston,*
for appellants.

*Tworoger & Steinberg* and *Ralph A. Horr,* for re-
spondent.

SIMPSON, J.—The plaintiff, as assignee of ninety
individual claims, instituted this action to collect
damages from the defendants because of the failure

[1]Reported in 86 P. (2d) 189.

on the part of the defendants to comply with the terms of certain contracts for employment.

The complaint contains ninety causes of action, one for each of the assignors. The first cause of action, realleged in each succeeding cause, contains the following allegations: That the Cannery Workers' and Farm Laborers' Union, Local No. 18257, was an unincorporated labor union, and the other defendants held themselves out as officers of that organization; that April 13, 1937, Florencio Oliva went to the office of the union and was informed by defendant Ponce Torres and other officers representing the union that they would procure employment for him in an Alaska cannery for the season of 1937 upon payment of five dollars for a permit; that Florencio Oliva paid the sum of five dollars and was given a permit, a copy of which follows:

"(CANNERY WORKERS' AND FARM LABORERS')
UNION
AMERICAN FEDERATION OF LABOR
Unity is Strength
[hands clasped]
Seattle
Founded June 19, 1933
(LOCAL 18257)
84 Seneca Street — Seattle, Wash.
Branch or
District    Cake
         1932
Date    4/13    19 37        No. 144
RECEIVED OF
   Florencio Oliva              $5.00
     Five and no/100 - - - - - - - - - DOLLARS
For Initiation                 $
For Dues from                 $
Permit PERMIT Apr. 13 1937 (Permit) $5.00
              Total - - - - - $5.00
Cannery Workers' and Farm Laborers' Union,
Local 18257
By       Ponce Torres           "

It is further alleged that the defendants did not procure the jobs as promised. In each cause of action there was an allegation concerning the wage to be paid the worker when sent to Alaska by the union, and the assignment of the cause of action to plaintiff. The allegations in the various causes of action named some one of the defendants as signing the permits on behalf of the union organization. The damages sued for in each instance were the amount the assignor would have earned had he worked in Alaska during the 1937 fishing and canning season and the sum of five dollars paid for the permit. During the trial, the court allowed an amendment to the complaint which described the defendant organization as "Local Union No. 18257, now Local No. 7, C. I. O."

Defendants answered generally, denying the allegations of the complaint. The case was tried by the court sitting without a jury; and at its conclusion, findings of fact, conclusions of law, and judgment were entered in favor of fifteen assignors for a total of the amounts claimed by them. This appeal followed.

The assignments of error briefly stated are as follows: (a) Failure of the court to sustain appellants' challenge to the sufficiency of the evidence made at the close of respondent's case and at the conclusion of the trial; (b) in the entry of its conclusions of law and judgment; and (c) in the entry of judgment against Cannery Workers' and Farm Laborers' Union, Local 7, affiliated with the Committee for Industrial Organization, and the remaining defendants.

The evidence may be summarized as follows: Just prior to the beginning of the Alaska fishing and canning season of 1937, Local Union No. 18257 was affiliated with the American Federation of Labor. During the summer of that year, the American Federation of Labor withdrew its charter from the local union,

and the entire membership affiliated itself with the Committee for Industrial Organization.

During the months of March, April, and May of 1937, the individual appellants issued to respondent's assignors permits to work in Alaska during the fishing and canning season for a consideration of five dollars, which was paid to and became part of the union funds. The permits were in form as alleged in the complaint. In each instance, the assignors testified the appellants promised them that if they were sent to Alaska they would receive a certain wage for the fishing season of three months. The assignors, in obedience to instructions by defendants, went to the union hiring halls regularly, and there awaited notification of employment. None of the assignors were given jobs, however, and, after the last fishing ship sailed for the north, they instituted this action.

Appellants contend that the individuals who issued the permits were not authorized by the union organization to bind it by such contracts, and that the permits gave to their holders only a chance to secure a job. The evidence, however, discloses that the issuance of permits was authorized by the union, and that they were signed by officers of the union at its headquarters upon printed forms bearing an insignia of the local organization. In addition, some of the permit holders testified that they were issued meal tickets by the union officials which were to be paid for when the fishing season was ended.

In testifying concerning statements made to one of the permittees, E. Taki, vice-president of Local Union No. 7, said:

"I told him that upon payment of this, he would have a job if there were enough jobs for him, and if the company would take him, but I told him, I made it plain to him that the union would not guarantee him a job."

■ Our examination of the record convinces us that the contracts made by the union officials were definite and certain, and sufficient to bind the appellants and to compel them to answer in damages for their violation.

It is admitted that holders of permits did not become regular members of the union, that regular members had a preferential right to the jobs, and that the permittees would only be sent to Alaska after the regular membership list had been exhausted. The regular membership of the union at the time was approximately 2,000, and 3,757 men were sent to Alaska by the union during the 1937 season. From this fact, it clearly appears that the union had every opportunity to send the permittees to Alaska had it made any reasonable effort to comply with its contracts.

The trial court was entirely justified in denying appellants' challenge to the sufficiency of respondent's proof, and in holding that the union was obligated under its contract to send the permit holders to Alaska. *Kiser v. Amalgamated Clothing Workers of America,* 196 Va. 574, 194 S. E. 727; *Nederlandsch Amer. S. M. v. Stevedores' & L. B. Soc.,* 265 Fed. 397; *Ex parte Edelstein,* (C. C. A.) 30 F. (2d) 636; *Clark v. Grand Lodge of Brotherhood of Railroad Trainmen,* 328 Mo. 1084, 43 S. W. (2d) 404, 88 A. L. R. 150; *Syz v. Milk Wagon Drivers' Union,* 24 S. W. (2d) (Mo. App.) 1080.

The evidence was in conflict, but we are satisfied that the trial court was correct in its analysis of the evidence, and in its conclusions drawn therefrom.

Appellants contend that, under the contract the union had with the employers, the employers could reject any men certified by the union, and that the industry would neither accept nor give jobs to respondent's assignors. However, there is an entire ab-

sence of proof submitted to support this contention. No evidence was introduced to show that any of the permit holders were rejected by the employers, nor does it appear that their names were ever submitted to the employers.

It is next urged that the court erred in entering judgment against Local Union No. 7, because the permits were issued by the old union and it alone was responsible for any damages sustained by the permittees. The record shows that, when Local Union No. 18257 changed its affiliation from the American Federation of Labor to the Committee for Industrial Organization, the entire membership of the old local was included in the new one, and everything owned by Local No. 18257 was transferred to or taken over by the new union. The new organization followed the old in the manner of conducting business, and kept in office most of the officers of the old union. The only changes made were in name and transferring allegiance to the Committee for Industrial Organization; in every other way, the union remained the same and hence could not by the simple change of name and affiliation be relieved from a contractual obligation.

In speaking on the change of the affiliation by a local union, this court stated in *Shipwrights etc. Ass'n v. Mitchell,* 60 Wash. 529, 111 Pac. 780:

"Regardless of the changes in membership and the changes in its affiliations, the association itself has remained the same, and the appellants were guilty of a gross breach of trust when they took it upon themselves to pay over its funds to a rival organization without warrant or authority."

In the recent case of *World Trading Corp. v. Kolchin,* 166 Misc. 854, 2 N. Y. Supp. (2d) 195, the court stated:

"Abundant authority can be marshaled in support of the proposition that severance or change of affiliation of a local union with the parent body does not alter the identity or take away the rights and responsibilities of the local. In *Oakes on Organized Labor and Industrial Conflicts,* p. 90, we read: 'The identity of a local union is not affected by its withdrawal from one general organization and its affiliation with another.' In a sister jurisdiction, *Shipwrights', Joiners' & Calkers' Ass'n, Local No. 2, of Seattle v. Mitchell,* 60 Wash. 529, 530, 111 P. 780, it was held that, 'Regardless of the changes in membership, and the changes in its affiliations, the association itself has remained the same.' In consequence no approval can be given plaintiff's argument that change of affiliation from the American Federation of Labor to the Committee for Industrial Organization has altered the nature and structure of the defendant. The same consideration must be accorded the claim that change of name from Wholesale Dry Goods Union to United Wholesale Employees of New York, Local 65, destroys the agreement. The speciousness of that argument is evidenced by the illustration that if Jones by order of the court changes his name to Brown he cannot thereby be said to have escaped the obligations or lost the benefits of contracts made under the name of Jones. There still remains the same natural person with whom the transactions were had. The same rule must apply to the corporation or a voluntary unincorporated association, creations of the law, as to a natural person."

In the case of *Wiltowski v. Wojciechowski,* 84 N. H. 262, 149 Atl. 506, it appeared that the majority of the members of an association sought to incorporate. The minority group brought the action to recover the funds which had belonged to the unincorporated organization and had been taken over by the corporation. The court held that the organization by incorporating merely changed its status or name, and the minority could not recover.

■ Under the last assignment of error, appellants contend that a judgment against an unincorporated association is invalid, and cites authority from other jurisdictions in support of that contention. However, this court has held that such organizations can be sued and judgments against them are valid. *St. Germain v. Bakery etc. Union*, 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F, 824; *Mountain Timber Co. v. Manufacturing Wood Workers Underwriters*, 98 Wash. 167, 167 Pac. 93.

■ In this court, appellants have submitted a demurrer to plaintiff's complaint upon the ground that the statements therein contained do not constitute a cause of action. The record fails to disclose that appellants submitted a demurrer to the complaint in the superior court, and no objection was made to the introduction of evidence upon the ground that the allegations of the complaint did not constitute a cause of action.

Pleadings are considered as amended to conform to the evidence properly before the court. *Flagg v. Flagg*, 192 Wash. 679, 74 P. (2d) 189. It is clear that the complaint as so amended stated a cause of action against all of the defendants.

We conclude that the judgment of the trial court was correct, and it is accordingly affirmed.

STEINERT, C. J., MILLARD, BEALS, and GERAGHTY, JJ., concur.